UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
MARILYN SEABROOKS MYRDAL                  )
                                          )
        Plaintiff,                        )
                                          )
        v.                                ) C.A. No. 05 CV 02351 (RCL)
                                          )
THE DISTRICT OF COLUMBIA, et al.          )
                                          )
                                          )
        Defendants.                       )
_____)

_____

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HER OPPOSITION TO THE DISTRICT OF COLUMBIA'S MOTION TO DISMISS HER COMPLAINT**

_____

William P. Farley 466280
Karl & Tarone
900 17th Street, N.W.
Suite1250
Washington, D.C. 20006
(202) 293-3200

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

I. FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

II. STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

III. ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

    A. The Comprehensive Merit Protection Act *Is Not* Applicable to this Action . .   6
        1. Count I   False Imprisonment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8
        2. Count II  False Arrest Is Not a Personnel Action Pursuant to the CMPA 8
        3. Count III   Civil Conspiracy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

    B. Defendant's Arguments CMPA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10
        Defendant's Search Violated the Fourth Amendment . . . . . . . . . . . . . . .   11

    C. Myrdal Properly Brings Her Claims for Constitutional Violations . . . . . . . .   12
        1. COUNT IV   VIOLATION OF 42 U.S.C. 1983 . . . . . . . . . . . . . . . . .   15
        2. COUNT V   VIOLATING 42 U.S.C. 1983: REFUSING OR
           NEGLECTING TO PREVENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17
        3. COUNT VI   ASSAULT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

    D. Defendant's Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

## TABLE OF AUTHORITIES

## CASES

*ACLU Found. of S. Cal. v. Barr*, 952 F.2d 457 (D.C. Cir.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Board of the County Com'rs v. Brown*, 520 U.S. 397 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Bond v. United States*, 529 U.S. 334 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Brown v. City of Fort Lauderdale*, 923 F.2d 1474 (11th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . 16

*Bush v. Lucas*, 462 U.S. 367 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*California v. Ciraolo*, 476 U.S. 207 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Canton v. Harris*, 489 U.S. 378 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Conley v. Gibson*, 355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*County Commrs. of Bryan County v. Brown*, 520 U.S. 397 (1997) . . . . . . . . . . . . . . . . . . . . . . . 15

*District of Columbia v. Thompson*, 593 A.2d 621 (D.C. 1991) . . . . . . . . . . . . . . . . . . . . . . . 6, 10

*Katz v. United States*, 389 U.S. 347 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*King v. Kidd*, 640 A.2d 656 (D.C.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12

*Kowal v. MCI Communications Corp.*, 16 F.3d 1271 (D.C. Cir.1994) . . . . . . . . . . . . . . . . . . . . . 5

*Kyllo v. United States*, 533 U.S. 27 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Leatherman v. Tarrant County Narc. Intel. and Coord. Unit*, 507 U.S. 163 (1993) . . . . . . . . . 5, 6

*Mincey v. Arizona*, 437 U.S. 385 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978) . . . . . . . . . . . . 12-14, 16

*Moore v. Valder*, 65 F.3d 189 (D.C.Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*New Jersey v. T.L.O.*, 469 U.S. 325 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Newman v. District of Columbia,* 518 A.2d 698 (D.C.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*O'Connor v. Ortega*, 480 U.S. 709 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

*Scheuer v. Rhodes*, 416 U.S. 319 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Schowengerdt v. General Dynamics Corp.*, 823 F.2d 1328 (9th Cir.1987) . . . . . . . . . . . . . . . . 10

*Seamons v. Snow*, 206 F.3d 1021 (10th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Sims v. Artuz*, 230 F.3d 14 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Soldal v. Cook County*, 506 U.S. 56 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Turner v. Upton County Texas*, 915 F.2d 133 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Blok*, 188 F.2d 1019 (D.C. Cir.1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Jacobsen*, 466 U.S. 109 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Mangum*, 100 F.3d 164 (D.C. Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Whren v. United States*, 517 U.S. 806 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Yeksigian v. Nappi*, 900 F.2d 101 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## STATUTES AND OTHER AUTHORITY

42 U.S.C. 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 13-18

D.C. Comprehensive Merit Personnel Act, D.C. Code §§ 1-601.01 *et seq.* . . . . . . 2, 6, 7, 8, 9, 12

Federal Rule of Civil Procedure Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fifth Amendment of the United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 16

Fourteenth Amendments of the United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 16

Fourth Amendment of the United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 16

Ku Klux Act of 1871 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARILYN SEABROOKS MYRDAL** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **C.A. No. 05 CV 02351 (RCL)** |
| | ) |
| **THE DISTRICT OF COLUMBIA, et al.** | ) |
| | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO THE MOTION TO DISMISS  BY DEFENDANT DISTRICT OF COLUMBIA**

Plaintiff, Marilyn Seabrooks Myrdal ("Myrdal") submits this memorandum of points and authorities in opposition to defendant District of Columbia's (the "District" or "Defendant") Motion to Dismiss her complaint.

## INTRODUCTION

Ms. Myrdal alleged six discrete causes of action in her complaint: Count I - False Imprisonment; Count II - False Arrest; Count III - Civil Conspiracy; Count IV - Violation of 42 U.S.C. 1983; Count V - Violations of 42 U.S.C. 1983: Refusing or Neglecting to Prevent; and Count VI - Assault.  It is undisputed that Ms. Myrdal has properly pled each of her causes of action.

Instead, Defendant moves to dismiss the complaint, *inter alia,* contending that Ms. Myrdal will be unable to sustain her constitutional claims against the District as to her counts 4-6.  The District's motion is based upon their misunderstanding of paragraphs 53-56 and ¶ 107 of Ms. Myrdal's complaint. The defendant informs this honorable court that Ms. Myrdal has not alleged

"that some policy of the municipality was "moving force behind the constitutional deprivation." Def. Mot., pg. 5, ¶ 1.

However, there is no support for the District's position in the complaint. Ms. Myrdal alleged in her November 9, 2005 complaint: (1) ¶ 53 "The execution of D.C.'s policy or custom to illegally search employees purses and handbags represents official policy," (2) ¶ 54 "Defendant policy or custom to search employees' purses and handbags in these types of situations is unconstitutional," (3) ¶ 55 "D.C.'s official policy or custom inflicted the injury here," (4) ¶ 56 D.C.'s policy or custom was the moving force in depriving plaintiff of her constitutional rights, and (5) ¶ 107 "Acting under color of law and pursuant to official policy or custom, Defendants knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis Defendant police officers . . ."

The District of Columbia also argues that plaintiff's common law tort claims--Counts I, II, and III, --are preempted by the D.C. Comprehensive Merit Personnel Act, D.C. Code §§ 1-601.01 *et seq.* ("CMPA"). However, the CMPA only applies if the sole subject matter of this lawsuit is a "personnel action." This is not a personnel matter because a warrantless search is not a "personnel action" covered by the CMPA. *See, e.g., Bush v. Lucas*, 462 U.S. 367, 385, fn. 28 (1983) ("Not all personnel actions are covered by this system. For example, . . . certain actions by supervisors against federal employees, such as wiretapping, warrantless searches, or uncompensated takings, would not be defined as 'personnel actions' within the statutory scheme.") Similar to the federal statute, the CMPA does not cover warrantless searches nor define them as a personnel action. D.C. Code §§ 1-601.01 *et seq.*

# I. FACTUAL BACKGROUND [1]

Ms. Marilyn Seabrooks Myrdal was the District of Columbia's Administrator at the Maternal and Family Health Administration at the District of Columbia Department of Health during the time period at issue. November 9, 2005 Complaint, *Myrdal v. D.C., et al.* ¶ 4-5.

Prior to March 2005 the District of Columbia issued Ms. Myrdal a credit card. Ms. Myrdal never asked for the credit card and rarely used the credit card. On or about March 22, 2005 the District of Columbia cancelled their employees credit cards, including plaintiff's employer issued credit card. Plaintiff was required to return her cancelled credit card to District of Columbia employee Kenneth Wong.

On April 13, 2005 at approximately 1:40 p.m., plaintiff made arrangements to return the cancelled credit card to Mr. Kenneth Wong on April 18, 2005. Mr. Kenneth Wong is the Administrative Services Manager, Primary Care Prevention and Planning Administration and Program Coordinator for the D.C. Purchase Card Program. Later on April 13, 2005, at approximately 2:15 p.m., Defendant Paula Senior Fisher entered Ms. Myrdal office unannounced and demanded that Ms. Myrdal provide the cancelled credit card to her. Ms. Senior-Fisher told Ms. Myrdal that the travel credit card had been suspended and that she needed it immediately.

Ms. Myrdal informed Ms. Senior Fisher that she did not have the cancelled credit card with her. Ms. Myrdal also informed Ms. Senior Fisher of her conversations with Mr. Wong and informed Ms. Senior Fisher that she had already made arrangements with Kenneth Wong to return the card no later than April 18, 2005.

---

[1] All facts are directly from Ms. Myrdal complaint, ¶ 4-63.

Soon after Ms. Myrdal informed Defendant Senior-Fisher that she did not have the card with her, Senior-Fisher came to Ms. Myrdal office with two **armed** security officers, Officer Roger Harris and Officer Kim Taylor.  The armed security officers worked for defendant security company and were under the control of Defendant Senior Fisher.  Officer Taylor asked Ms. Myrdal if she had the government property Ms. Senior Fisher was requesting.  Ms. Myrdal informed everyone that she did not have the cancelled credit card in her possession.  Ms. Myrdal also informed the security officers of the DOH procedure which required her to surrender the travel credit card to Kenneth Wong.  Ms. Myrdal informed the officers that she had already made arrangements with Mr. Wong to return the travel credit card on April 18, 2005 as was required by the District of Columbia.

Ms. Senior Fisher then instructed the armed officers to search Ms. Myrdal's purse and tote bag.  Ms. Myrdal never gave her consent for any of the defendants to search her personal belongings, neither her purse nor her tote bag.  The Security personnel and Ms. Senior Fisher searched Ms. Myrdal personal belongings, including her purse and tote bag, without authorization.

After searching Ms. Myrdal's personal purse and tote bag, Officer Taylor instructed Ms. Senior-Fisher to locate Mr. Wong to confirm Ms. Myrdal's earlier statements that she was required to return the cancelled card to Mr. Wong on April 18, 2005.  The armed security personnel would not permit Ms. Myrdal to leave her office and kept her imprisoned while Ms. Senior-Fisher was gone to find Mr. Wong.

At or about 2:30 p.m. on April 13, 2005, Mr. Wong was contacted by Ms. Senior Fisher and asked to report to Ms. Myrdal office.  Mr. Wong was questioned by Officer Stanley after arriving to Ms. Myrdal office.  Mr. Wong acknowledged that he had instructed Ms. Myrdal to return the

travel credit card to him no later than Monday, April 18, 2005. Ms. Myrdal was following the defendants' procedures in returning the cancelled credit card directly to Mr. Wong.

Ms. Myrdal has given notice pursuant to D.C. Statute § 12-309. A report in writing by the Metropolitan Police Department, in regular course of duty has been created in this matter.

## II. STANDARD OF REVIEW

For a Rule 12(b)(6) motion to dismiss for failure to state a claim, "the complaint is construed liberally in the plaintiffs' favor and plaintiff is granted the benefit of all inferences that can be derived from the facts alleged. *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir.1994). Dismissal pursuant to a Rule 12(b)(6) motion, which merely tests the legal sufficiency of a complaint, is inappropriate unless the "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The plaintiff's factual allegations are accepted as true and the complaint is construed "liberally," "grant[ing] plaintiff[ ] the benefit of all inferences that can be derived from the facts alleged," *Moore v. Valder*, 65 F.3d 189, 192 (D.C.Cir.1995).

At the Rule 12(b)(6) stage the court does not assess "the truth of what is asserted or determin[e] whether a plaintiff has any evidence to back up what is in the complaint." *ACLU Found. of S. Cal. v. Barr,* 952 F.2d 457, 467 (D.C. Cir.1991).

The Federal Rule of Civil Procedure 8 requires simply that the defendants be given fair notice of what the plaintiff's claim is and the grounds upon which it rests. This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. *Conley v. Gibson*, 355 U.S. 41, at 47-48; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163,

168-169, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

The task of the court addressing a 12(b)(6) motion is not to determine the weight of the evidence, but only to assess the legal feasibility of the complaint. *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000). "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 319, 322, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Only notice pleading is required at this stage of the litigation. *Leatherman v. Tarrant County Narcotics Unit.* Thus, to survive a motion to dismiss, Plaintiff must assert a short and plain statement alleging that Defendant violated her constitutional rights through (1) an official policy or custom of Defendant; or (2) a single act which inflicts constitutional injury by an official with final policy making authority with respect to the challenged action. *See Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir. 2000).

## III. ARGUMENTS

### A. The Comprehensive Merit Protection Act *Is Not* Applicable to this Action

In *District of Columbia v. Thompson*, 593 A.2d 621 (D.C. 1991), the D.C. Court of Appeals held that the CMPA "provide[s] District employees with their exclusive remedies for claims arising out of employer conduct in handling personnel ratings, employee grievance, and adverse actions." That court reasoned that these were the types of employer actions covered by Subchapters XVI-A and XVII of the CMPA. *Id.* at 635 (emphasis added). Thus, the court allowed plaintiff's claims of assault and battery to go forward because they were not "personnel" actions covered by the CMPA. *Id.* at 625, 635.

In *King v. Kidd*, 640 A.2d 656 (D.C.1993), the D.C. Court of Appeals reiterated that the

CMPA preempts common law tort claims only where the wrongful treatment or injury in a particular case is "cognizable as a 'personnel' issue under the Act's 'performance ratings,' 'adverse actions,' and 'employee grievances' provisions." *Id.* at 663 (a claim of intentional infliction of emotional distress is **not** preempted where it was based on *quid pro quo* sexual harassment and subsequent retaliation, rather than on a personnel action).

In *King v. Kidd*, the D.C. Court of Appeals stated:

> We did not hold, however, that the CMPA preempts tort claims in general or all claims of intentional infliction of emotional distress in particular. Rather, the CMPA implicitly preempts a common law action *only* if the employee claims wrongful treatment and injury cognizable as a "personnel issue" under the Act's "performance ratings," "adverse actions," and employee "grievances" provisions. . . . We have held, however, that "public employees do *not* lose their common law rights to sue for the[ir] injuries . . . [when] neither those injuries nor their consequences trigger the exclusive provisions of the CMPA."

*Id.* at 663, 664 (citation omitted) (emphasis added); *see* D.C. Code §§1-615.1 to 615.5 and §§1-617.1 to 617.3; *cf. Newman v. District of Columbia,* 518 A.2d 698, 705-06 (D.C.1986) (intentional infliction of emotional distress claim grounded on alleged discrimination based on sexual orientation *not* preempted by exclusivity provision of CMPA disability compensation subchapter).

Pursuant to DC Code § 1-601.01, the CMPA "guarantee[s] certain benefits to incumbent employees of the District of Columbia government . . . including, without limitation, benefits relating to appointments, promotions, discipline, separation, pay, unemployment compensation, health, disability and death benefits, leave, retirement, insurance, and veterans' preference." An illegal search and false imprisonment is **not** a *benefit* contemplated by the CMPA.

Searches and seizures by government employers or supervisors of private property of their

employees are subject to restraints of Fourth Amendment. ("Searches and seizures by government employers or supervisors of the private property of their employees are subject to Fourth Amendment restraints.") *O'Connor v. Ortega*, 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987).

### 1. <u>Count I - False Imprisonment</u>

Ms. Myrdal's claims for False Imprisonment, False Arrest and Civil Conspiracy are based on a factual allegation that would not qualify as a personnel action covered by the CMPA. In Count I, False Imprisonment, plaintiff has alleged that, she was detained and when she tried to leave her office the Defendants moved in front of the door to block her from leaving. She also alleges that she was detained for a length of time and deprived of her personal liberty or freedom of locomotion. Ms. Myrdal also alleged: (a) the Defendants acted with the intention of confining Myrdal within fixed boundaries, (b) the act directly or indirectly resulted in confinement, and (c) Myrdal was conscious of the confinement. Complaint, ¶¶ 73-83.

Construing this allegation in the light most favorable to plaintiff, plaintiff alleges that the defendants were engaging in conduct to prevent plaintiff from her liberty based on personal animus. Such action, if proven, would not be a "personnel action" covered by the CMPA, and could not be grieved by plaintiff under the CMPA. Accordingly, the claim for False Imprisonment alleged in Count I is not preempted by the CMPA.

### 2. <u>Count II - False Arrest Is Not a Personnel Action Pursuant to the CMPA</u>

In Count II, False Arrest, plaintiff has alleged that Defendants would not permit plaintiff to leave her office. Plaintiff tried to leave her office and defendants blocked the door with their bodies and guns. Defendant restrained plaintiff against her will. Defendants knew that their actions in keeping plaintiff in her office when there were no allegations that she did anything

wrong constitutes a false arrest. Defendants did not have a reasonable nor good faith belief that his or her conduct was lawful. Complaint, ¶¶ 85-91.

Construing this allegation in the light most favorable to plaintiff, plaintiff alleges that the defendants were engaging in conduct to prevent plaintiff from her liberty based on personal animus. Such action, if proven, would not be a "personnel action" covered by the CMPA, and could not be grieved by plaintiff under the CMPA. Accordingly, the claim for False Arrest alleged in Count II is not preempted by the CMPA.

3. **Count III - Civil Conspiracy**

In Count III, Civil Conspiracy, Ms. Myrdal alleged that Defendants each: (1) had an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and (3) an injury to Ms. Myrdal was caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme. As a result of their concerted unlawful and malicious actions by Defendants, Myrdal was deprived of both her liberty without due process of law and her right to equal protection of the laws, and the due course of justice was impeded, in violation of District of Columbia law, the common law and the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sec. 1983. Complaint ¶¶ 94-96.

Construing this allegation in the light most favorable to plaintiff, plaintiff alleges that the defendants were engaging in conduct to prevent plaintiff from her liberty and due process of the law based on maliciousness. Such action, if proven, would not be a "personnel action" covered by the CMPA, and could not be grieved by plaintiff under the CMPA. Accordingly, the claim for Civil Conspiracy alleged in Count III is not preempted by the CMPA.

## B. **Defendant's Arguments - CMPA**

Defendant's assertion that the decision of the D.C. Court of Appeals in *District of Columbia v. Thompson*, 593 A.2d 621 (D.C. 1991), requires dismissal of plaintiff's common law causes of action is not supported by the law nor the facts of this case.  An analysis of *District of Columbia v. Thompson* and its progeny does not support the District's argument because these cases only bar lawsuits for "personnel actions" falling within the scope of the Comprehensive Merit Protection Act ("CMPA").  Because the acts Myrdal alleges do not constitute "personnel actions" falling within the scope of the CMPA, the District's motion should be denied.

The CMPA defines prohibited personnel actions to include: "recommended, threatened, or actual termination, demotion, suspension, or reprimand; involuntary transfer, reassignment, or detail; referral for psychiatric or psychological counseling; failure to promote or hire or take other favorable personnel action . . ."  The searching of a purse was not a "personnel matter."

A purse generally contains private property and personal items and effects, and generally is for a person's exclusive use. Items of such a personal nature cannot be said to be subject to random searches by employers without some sort of prior notice to the employees.  *See e.g., Schowengerdt v. General Dynamics Corp.*, 823 F.2d 1328, 1335 (9th Cir.1987).

In the absence of a valid regulation to the contrary Ms. Myrdal was entitled to, and did, keep private property of a personal nature in her purse.  Defendants could not reasonably search her purse, her personal letters, or anything else that did not belong to the government and had no connection with the work of the office.  *Id. (quoting United States v. Blok*, 188 F.2d 1019, 1021 (D.C. Cir.1951)); *see also New Jersey v. T.L.O.*, 469 U.S. 325, 337 (1985) (holding that student had protectible Fourth Amendment right against school officials' unreasonable search of her purse for

evidence that she violated school's regulations against smoking). Myrdal's complaint that Defendants searched her purse sufficiently alleges an intrusion on a legitimate Fourth Amendment interest.

### The Defendant's Search Violated the Fourth Amendment

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated. . . ."

The Supreme Court has explained that "[t]he touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy."*California v. Ciraolo*, 476 U.S. 207, 211, 106 S.Ct. 1809, 1811, 90 L.Ed.2d 210 (1986) (*quoting Katz v. United States*, 389 U.S. 347, 360, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)). If Ms. Myrdal had a reasonable expectation of privacy, a Fourth Amendment search was conducted upon her when her personal belongings, including her purse, were searched. *Kyllo v. United States*, 533 U.S. 27, 33, 121 S.Ct. 2038, 2042, 150 L.Ed.2d 94 (2001).

A "search occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *Soldal v. Cook County*, 506 U.S. 56, 63, 113 S.Ct. 538, 544, 121 L.Ed.2d 450 (1992) (*quoting United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984) (*internal quotations omitted*).

"In determining whether a . . . search is reasonable under the Fourth Amendment, courts look to objective evidence, not subjective intentions." *United States v. Mangum*, 100 F.3d 164, 170 (D.C.Cir.1996) (*citing Whren v. United States*, 517 U.S. 806, 812-13, 116 S.Ct. 1769, 1773-74, 135 L.Ed.2d 89 (1996)). The issue is the objective effect of the officers' actions, *i.e.*, whether Ms. Myrdal's reasonable expectation of privacy was infringed. *Bond v. United States*, 529 U.S. 334, 338 n. 2, 120 S.Ct. 1462, 1465 n. 2, 146 L.Ed.2d 365 (2000).

Here, the officer's search of Ms. Myrdal's private property, her purse, constituted a search, and a warrantless search of private property was per se unreasonable because it does not fall within one of the "few specifically established and well-delineated exceptions" to the warrant requirement. *Mincey*, *Mincey v. Arizona*, 437 U.S. 385, 390 (1978)(citations omitted).

It should be noted that there is no allegation that Ms. Myrdal was in possession of any dangerous instrumentality.  Further, the credit card was worthless as it had already been cancelled. There is no value in a cancelled credit card, indeed, credit card companies own the card and it is only issued for the duration of the credit line.

In the District of Columbia, "public employees do not lose their common law rights to sue for the[ir] injuries . . . [when] neither those injuries nor their consequences trigger" the exclusive provisions of the CMPA. *King v. Kidd, supra*, 640 A.2d at 664.  This court therefore has jurisdiction over Myrdal's tort claims which do not "***fit[] squarely*** within the text and purpose of the CMPA's administrative review and grievance procedures."  *Kidd*, 640 A.2d at 663 (citation omitted) (emphasis added). Myrdal alleges that Defendant's searched her purse and Ms. Myrdal, feared for her personal safety.  Complaint, ¶¶ 73-94.  Construing the Complaint in the light most favorable to plaintiff, the complaint sufficiently alleges that the search of the purse was unreasonable, the false imprisonment and false arrest were illegal, and none are barred by the CMPA, thus, Counts I-III are not barred by the CMPA and the District's Motion must be denied.

### C. Myrdal Properly Brings Her Claims for Constitutional Violations

Myrdal agrees that *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978)

provides the rule of decision.[2]  In *Monell,* the Supreme Court held that municipalities may be held

liable where "action taken pursuant to official municipal policy of some nature caused a

constitutional tort."  *Id*. at 691.  Under *Monell*, municipal liability depends upon proof of

1.      an official "policy" or "custom;"

2.      an unconstitutional injury; and

3.      a link between the two.

*Id.* at 691-692.

Under Monell, the District is responsible for constitutional wrongs visited upon citizens

pursuant to official "policy." "Policy" consists of a "policy statement, ordinance, regulation, or

decision officially adopted and promulgated by that body's officers," *Monell*, 436 U.S. at 690, 98

S.Ct. at 2036, and encompasses the actions of the municipality's employees "whose edicts or acts

may fairly be said to represent official policy." *Id*. at 694, 98 S.Ct. at 2037. The term "often refers

to formal rules and understandings," but its meaning is not exhausted by "fixed plans of actions to

be followed under similar circumstances consistently and over time." *Pembaur v. City of Cincinnati*,

475 U.S. 469, 480-81, 106 S.Ct. 1292, 1298-99, 89 L.Ed.2d 452 (1986).

Here, the District had a policy and practice that permitted its supervisory employees to search

the personal belongings of citizens who had committed no offences and were not posing any danger.

Complaint, ¶ 50-57.

The Court in *Monell*, held that municipalities are "persons" subject to damages liability under

sec. 1 of the Ku Klux Act of 1871, 42 U.S.C. sec. 1983, for violations of that Act visited by

---

[2]      Even if plaintiff fails to meet the *Monell* standard for the award of damages, this
does not require dismissal of the lawsuit, Myrdal is still entitled to injunctive relief against the
District.  *Ex Parte Young,* 209 U.S. 123 (1908).

municipal officials" *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 810 (1985) and that the "municipal liability could only be imposed for injuries inflicted pursuant to government "policy or custom." *Monell*, at 694.

A municipality's continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of that action -- the "deliberate indifference" -- necessary to trigger municipal liability. *Board of the County Com'rs v. Brown*, 520 U.S. 397, 407, 117 S.Ct. 1382, 1390 (1997), *citing and discussing Canton v. Harris*, 489 U.S. 378, 390 n. 10 (1989).

The Defendant's employees in exercising their discretion so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers. *Board of the County Com'rs*, 520 U.S. at 407, citing Canton, at 397. The policymaker's toleration of the subordinates' behavior establishes a policy-in-practice just as readily attributable to the municipality as the one-act-policy-in-practice. Such a policy choice may be inferred even without a pattern of acts by subordinate officers, so long as the need for action by the policymaker is so obvious that the failure to act rises to deliberate indifference. *Board of the County Com'rs*, 520 U.S. at 418. [W]here a municipality's failure to train its employees . . . evidences a `deliberate indifference' to the rights of its inhabitants can . . . a shortcoming be . . . city `policy or custom' . . . actionable under sec. 1983. *Id.,* 520 U.S. at 419.

"[M]unicipal liability for failure to train may be proper where it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations . . ." *Board of the County Com'rs*, 520 U.S. at 407. A municipality may be liable under sec. 1983, *see Monell v. Dept. of Soc. Servs. of New York*, at 694, if the injury is caused by "officials whose acts may fairly

Page -14-

be said to be those of the municipality," or if there is a municipal policy or custom that caused the injury. *County Commrs. of Bryan County v. Brown*, 520 U.S. 397, 403-404 (1997).

This condition is satisfied here. Myrdal alleges that it was the policy and custom of the District to illegally search their employees' purses. Complaint, ¶ 35-36, 38. Myrdal alleges that Defendants had no legal right to search her personal belongings for a cancelled credit card and Defendants illegally searched through her intimate possessions, including her purse, without authorization or probable cause. The search was conducted by security guards with powers akin to that of a regular police officer who were appointed by a governmental official, and even though employed by a private company, sufficient trappings of state authority trigger Fourth Amendment restrictions. Complaint, ¶ 35-39. Myrdal should be permitted to develop the record based upon her allegations.

Myrdal also alleged that the execution of the District's policy or custom to illegally search employees purses and handbags represents the official policy of the District of Columbia. Myrdal alleged the Defendants' search of plaintiff's purse violated clearly established statutory or constitutional rights of which a reasonable person would have known. The defendants violated plaintiff's "clearly established" rights that a reasonable official would understand violated plaintiff's rights. Complaint, ¶ 53-62.

## 1. COUNT IV - VIOLATION OF 42 U.S.C. 1983

A plaintiff properly establishes a claim for a violation of 42 U.S.C. § 1983 claim by alleging that (1) she was deprived of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation was committed under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). Municipal liability under section 1983

is properly alleged by claiming deprivations of federally protected rights caused by action taken "pursuant to official municipal policy of some nature," or "by municipal policy makers under appropriate circumstances." *Monell v. New York City Dep't of Social Serv.*, 436 U.S. at 691; *Pembaur v. City of Cincinnati*, 475 U.S. at 480.

Section 1983 claims against local governments should be permitted to advance until plaintiff can conduct discovery and develop the record. *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1480 (11th Cir. 1991) (police officer alleged he was fired by police chief and city manager for discriminatory reasons); *Turner v. Upton County Texas*, 915 F.2d 133, 137-138 (5th Cir. 1990) (plaintiff alleges a conspiracy involving county sheriff stemming from drugs planted on her business premises); *Yeksigian v. Nappi*, 900 F.2d 101, 104-105 (7th Cir. 1990) (plaintiff alleged the deputy commissioner of aviation had policy-making authority to procure his arrest).

Myrdal alleges that acting under the color of law, Defendants worked a denial of her rights, privileges or immunities secured by the United States Constitution or by Federal law by depriving her of her liberty without due process of law, by taking her into custody and holding her there against her will. And by making an unreasonable search and seizure of Myrdal's property without due process of law. Complaint, ¶ 97-100.

Further, Myrdal alleged the District conspired for the purpose of impeding and hindering the due course of justice, with intent to deny plaintiff equal protection of laws by refusing or neglecting to prevent such deprivations and denials to plaintiff, thereby depriving plaintiff of her rights, privileges, and immunities as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States. Compliant, ¶ 101- 102. Myrdal alleged the District deprived of her of both her liberty without due process of law and her right to equal protection of the laws, and

the due course of justice was impeded, in violation of District of Columbia law and the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sec. 1983. *Id.*, ¶ 103.

Combined with official policy of the District to commit these acts, Myrdal has sufficiently alleged this Count to survive a motion to dismiss. Thus, Defendant's motion should be denied.

### 2.    COUNT V - VIOLATING 42 U.S.C. 1983: REFUSING OR NEGLECTING TO PREVENT

Myrdal alleged that at all times relevant to this Complaint, Defendants were acting under the direction and control of Defendants Paula Senior Fischer, and Defendant District of Columbia. And that acting under color of law and pursuant to official policy or custom, Defendants knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis Defendant police officers in their duties to refrain from:

(a) unlawfully and maliciously harassing a citizen who was acting in accordance with her constitutional and statutory rights, privileges, and immunities,

(b) unlawfully and maliciously arresting, imprisoning and prosecuting a citizen who was acting in accordance with her constitutional and statutory rights, privileges, and immunities,

(c) conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and laws of the United States and the laws of the District of Columbia; and

(d) otherwise depriving Plaintiff of her constitutional and statutory rights, privileges, and immunities. Complaint, ¶ 105-107. Further, Myrdal alleged that the District of Columbia had knowledge or, had they diligently exercised that duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed. Complaint, ¶ 108. Myrdal also alleged that the

Defendant District of Columbia had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.  Complaint, ¶ 109.

The District of Columbia directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of the other Defendants to this action. Complaint, ¶ 110.

As a direct and proximate cause of the negligent and intentional acts of the District of Columbia, as set forth above, Myrdal suffered physical injury, loss of income, and mental anguish in connection with the deprivation of her constitutional and statutory rights guaranteed by District of Columbia law and the Fifth and Fourteenth Amendments of the Constitution of the United States and protected by 42 U.S.C. §1983.  Complaint, ¶ 111.

### 3. COUNT VI - ASSAULT

Myrdal alleged that the District of Columbia, had a duty of care to ensure that their employees and agents did not violate Ms. Myrdal rights.  The District deviated from that standard. There is a causal relationship between that deviation and the plaintiff's injuries.  The District intentionally created an apprehension of immediate physical harm by means of an overt gesture, to wit by forcing Ms. Myrdal to remain in a room by threatening her and blocking the exit and detaining her for an extended period of time.  Complaint, ¶ 114-121.

As there were an number of employees involved in assaulting Ms. Myrdal, there can be an inference that such a large number of persons would not have conducted themselves in this way except that there was an official policy.

### D. **Defendant's Arguments**

Defendant informs the Court that "Plaintiff has alleged one discrete act as a violation of her constitutional rights . . ." As shown above on page 2, Defendant is mistaken. Ms. Myrdal alleged it was Defendant's policy or custom to search employee's purses and handbags in these types of situations. Complaint, ¶ 53-56, 107.

Defendant further argues that plaintiff did not allege deliberate indifference. However, Myrdal alleged that the District's "conduct involved reckless or callous indifference to plaintiff's federal, constitutional, and statutorily protected rights." Complaint, ¶ 69.

As the premises of Defendant's motion to dismiss Counts IV-VI are based on a misreading of the complaint, Defendant's motion to dismiss Counts IV-VI should be denied.

## CONCLUSION

Accordingly, Myrdal requests the Court to deny Defendant's Motion Dismiss. A draft order is attached.


Respectfully submitted,


    /s/William P. Farley
William P. Farley #466280
Karl & Tarone
900 17th Street, N.W.
Suite 1250
Washington, D.C.  20006
(202) 293-3200
Counsel for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| **MARILYN SEABROOKS MYRDAL** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) C.A. No. 05 CV 02351 (RCL) |
| | ) |
| **THE DISTRICT OF COLUMBIA, et al.** | ) |
| | ) |
| | ) |
| **Defendants.** | ) |

---

## ORDER

Upon consideration of Defendant's Motion to Dismiss the Complaint, Plaintiff's opposition,

Defendant's reply, and the record herein, it is the ____ day of _____, 2006 hereby:

**ORDERED** that the Defendant's Motion to Dismiss the Complaint should be, and hereby

is **DENIED**.


_____
The Honorable Royce C. Lamberth
United States District Court Judge

Copies to:


William P. Farley
Farley@dccounselor.com
Karl & Tarone
900 17th Street, N.W., Suite 1250
Washington, D.C. 20006
Counsel for Plaintiff

Kelly Hughes Iverson
khi@gdldlaw.com
sjr@gdldlaw.com
Counsel for Defendant Watkins Security

Leonard Lewis McCants
mccantslaw@aol.com
Counsel for Defendant Hawk Security

George E. Rickman
george.rickman@dc.gov
patricia.jones@dc.gov
Counsel for Defendant District of Columbia

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Plaintiff's Opposition to Defendant's Motion to Dismiss the Complaint, was served on all parties pursuant to the court's rules via electronic transmission, on this 13th day of February 2006 to:


Kelly Hughes Iverson
khi@gdldlaw.com
sjr@gdldlaw.com
Counsel for Defendant Watkins Security

Leonard Lewis McCants
mccantslaw@aol.com
Counsel for Defendant Hawk Security

George E. Rickman
george.rickman@dc.gov
patricia.jones@dc.gov
Counsel for Defendant District of Columbia



_____/s/__William P. Farley_____
William P. Farley 466280
Karl & Tarone
900 17th Street, N.W.
Suite1250
Washington, D.C. 20006
(202) 293-3200
Counsel for Plaintiff