## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARILYN SEABROOKS MYRDAL** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **C.A. No. 05 CV 02351 (RCL)** |
| | ) |
| **THE DISTRICT OF COLUMBIA, et al.** | ) |
| | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

### PLAINTIFF'S RULE 37 MOTION FOR AN ORDER PRECLUDING DEFENDANT FROM OFFERING TESTIMONY CONCERNING THE SUBJECT MATTER OF PLAINTIFF'S RULE 30(B)(6) NOTICE OF DEPOSITION AND MEMORANDUM IN SUPPORT OF HER MOTION

Plaintiff, Marilyn Seabrooks Myrdal ("Myrdal") brings this motion pursuant to Federal Rules of Civil Procedure, Rule 37 seeking enforcement of the Federal Rules as well as this Court's December 13, 2007 order concerning the taking and defense of the Defendant District of Columbia's ("District") Rule 30(b)(6) Deposition.

Pursuant to Local Rule 7(m), Myrdal requested Defendant's consent to this motion. The defendant has informed plaintiff they will oppose this motion.

Myrdal put forth 20 topics for her Rule 30(b)(6) deposition. This Court ordered the District to provide a witness for those 20 topics. The District's witness could not answer 19 of those topics.

Myrdal has been denied the discovery she is entitled pursuant to the Federal Rules of Civil Procedure, Rule 30. If Myrdal was permitted to obtain this Rule 30(b)(6) information, as the Court ordered, she could have used the factual statements from the District to hone the legal basis for her case, or help her estimate the value of the stakes in the case and her chances of prevailing on the

1

merits. Due to the District's conduct, litigation costs are increased and uncertainty reigns, exactly the opposite of the wishes of the Court as evidenced by the earlier ruling.

### Brief Procedural Background

On October 10, 2007 Myrdal served her Notice of Rule 30(b)(6) deposition on the District of Columbia and sent a courtesy copy via email setting the date of the deposition for October 23, 2007. The District did not appear for that deposition. Plaintiff then filed a motion to compel that deposition. On December 13, 2007 the Court granted that motion and ordered the District of Columbia to appear for their Rule 30(b)(6) deposition on December 19, 2007 at 10:00 a.m.

At the December 13, 2007 hearing the District represented to the Court that they had a prepared witness, Mr. Wong. Plaintiff's counsel raised with the Court the issue of whether that witness would be prepared to answer the topics of the October 10, 2007 notice. The Defendant did not inform the Court that there would be any problem with that witness.

On December 19, 2007, the District represented that Mr. Wong, and only Mr. Wong, was necessary to meet their obligations pursuant to the Rules. In fact, Mr. Wong was unable to answer 19 out of the 20 topics that were noticed. Mr. Wong did partially answer three topics, including Topic 11,"All steps taken by any person to prepare to answer these Rule 30(b)(6) questions, including the date preparation began and who was consulted - other than attorneys," was only answered as to Mr. Wong's preparation.

### A. Mr. Wong's Testimony on Behalf of the District

Kenneth Wong was proffered by defendant to answer all of the Rule 30(b)(6) Topics. A copy of the Rule 30(b)(6) Notice is attached here as Exhibit "A." The notice reminded the District of their obligations pursuant to Rule 30(b)(6), stating: "One of the chief purposes of Rule 30(b)(6) is to

prevent the witness from disclaiming knowledge of facts which are clearly known to persons in the organization and thereby frustrating discovery. Rule 30(b)(6) witnesses are required to gather all of the documents which are relevant to plaintiff's questions. They are also required to investigate the knowledge of any person who would be able to answer plaintiff's questions." *Id.,* pg. 1-2.

**The Following Are the Topics upon Which the Examination Was to Be Conducted:**

Mr. Wong gave the following testimony under oath:

Topic Number 1.    The procedures and policies used to recover government issued credit cards from supervisory employees.

**The District's Response:**

> 11    Q.  Before we get deep into these questions, tell
>
> 12   me which questions you can't answer.
>
> 13    A.  Number 1, I think, I can talk on.
>
> **14    Q.  You can't answer fully to --**
>
> **15    A.  No.**
>
> **16    Q.  -- about the policy?**
>
> **17    A.  No.**

December 19, 2006 Deposition of Defendant District of Columbia ("Dep. __"), pg. 8. A copy of the relevant pages is attached here as Exhibit "B."

Topic Number 2.    The official policy which has been adopted by the District of Columbia to train their employees for searching other employees' personal property.

**The District's Response:**

> 18    Q.  How about number 2, could you read number 2

3

19  for the record.

20     A.  "The official policy which has been adopted

21  by the District of Columbia to train their employees

22  for searching other employees' personal property."  **I**

**1  can't address that.**

Dep., pg. 8-9

Topic Number 3.     The formal rules or understandings provided to District of Columbia employees intended to establish fixed plans of action to be followed under circumstances described in the Complaint to obtain the return of plaintiff's government issued credit card.

**The District's Response:**

THE WITNESS:  I don't know.  I've never been

16  searched and I don't know of anybody else who has been.

**17  If there's a policy, I know nothing of it.**

Dep., pg. 10.

Topic Number 4.     The names and responsibilities of the policy makers that determined the District of Columbia's policy on the searching of employees personal belongings as of April 13, 2005.

**The District's Response:**

6     Q.  Number 4, can you read that for the record.

7      A.  "The names and responsibilities of the policy

8  makers that determined the District of Columbia's

9  policy on the searching of employees' personal

10   belongings as of April 13, 2005." **I can't address,**

**11   once again.**

Dep., pg. 11.

Topic Number 5.     When, where, why and upon whose direction any documents responsive to plaintiff's discovery requests were destroyed.  The identity of those documents and the date they were destroyed.  The identity of any person who has destroyed documents relating to any of Plaintiff's claims and the person responsible for preserving such documents.

**The District's Response:**

12     Q.   Number 5, would you read that for the record.

13     A.   "When, where, why and upon whose direction

14   any documents responsive to plaintiff's discovery

15   requests were destroyed, the identity of those

16   documents and the date they were destroyed, the

17   identity of any person who has destroyed documents

18   relating to any of plaintiff's claims and the person

19   responsible for preserving such documents." **I cannot**

**20   address that either.**

Dep., pg. 11.

Topic Number 6.     The sum and substance of each and every communication between the Defendant, or its employees, and any investigator, or person involved in investigating, Plaintiff's government issued credit card that was discussed by the plaintiff and defendants on April 13, 2005.

**The District's Response:**

21    Q.   And number 6?

22    A.   "The sum and substance of each and every

1    communication between the defendant or its employees,

2    and any investigator or person involved in

3    investigating plaintiff's government-issued credit card

4    that was discussed..."  **I do not know.**

Dep., pg. 11-12.

Topic Number 7.    The process used, and the persons involved in creating the standards used for investigating, Plaintiff's government issued credit card that was relinquished by her on April 14, 2005, the standards used, when those standards were developed, who developed those standards.

**The District's Response:**

21    Q.   Number 7, could you read that for the record,

22    please.

1    A.   "The process used and the persons involved in

2    creating the standards used for investigating

3    plaintiff's government-issued credit card that was

4    relinquished by her on April 14, 2005, the standards

5    used, when those standards were developed, who

6    developed those standards."  **No, I do not.**

Dep., pg. 12-13.

Topic Number 8.    The date defendant District of Columbia became aware that Ms. Seabrooks was being investigated for failing to return her credit card and the names and

6

responsibilities of all those involved in that investigation, including, but not limited to, any person responsible to review or scan of her personal belongings.

**The District's Response:**

> 7    Q.  And number 8.
>
> 8    A.  "The date Defendant District of Columbia
>
> 9    became aware that Mrs. Seabrooks was being investigated
>
> 10   for failing to return her credit card and the names and
>
> 11   responsibilities of all those involved in that
>
> 12   investigation, including but not limited to any person
>
> 13   responsible to review or scan of her personal
>
> 14   belongings."  **I can't address that either because I**
>
> 15   **don't know who took her personal belongings.**

Dep., pg. 13.

Topic Number 9.    Whether there has been, and the number of investigations defendant District of Columbia has taken concerning any claim made by Ms. Seabrooks in this matter, the date the investigation was undertaken, and the identity of any person involved in the investigation, including, but not limited to, the persons investigated and the identity of the investigators.

**The District's Response:**

> 16   Q.  And number 9.
>
> 17   A.  "Whether there has been, and the number of
>
> 18   investigations Defendant District of Columbia had taken
>
> 19   concerning any claim made by Mrs. Seabrooks in this

20  matter, the date the investigation was undertaken, and

21  the identity of any person involved in the

22  investigation, including but not limited to the persons

1  investigated and the identity of the investigators."

2  **Once again, I am not aware who investigated or why.**

Dep., pg. 13-14.

Topic Number 10.     All information and standards of the District of Columbia's policies and procedures concerning the use of private security firms to mediate disputes and search employees belongings.

**The District's Response:**

3  Q.  And number 10, please.

4  A.  "All information and standards of the

5  District of Columbia's policies and procedures

6  concerning the use of private security firms to mediate

7  disputes and search employees' belongings." **I don't**

8  **know anything about that either.**

Dep., pg. 14

Topic Number 11.     All steps taken by any person to prepare to answer these Rule 30(b)(6) questions, including the date preparation began and who was consulted - other than attorneys.

**The District's Response:**

9  Q.  Number 11.

10  A.  "All steps taken by any person to prepare to

11   answer these Rule 30(b)6 questions, including the date

12   preparation began and who was consulted, other than

13   attorneys."

**14      Q.  You can speak only to yourself?**

**15      A.  Yes.**

Dep., pg. 14.

Topic Number 12.      The policy and practice used by the District to discipline employees

who look through other employees personal belongings such as purses, bags, clothing pockets, brief

cases, etc.  This would also include all searches that the District has determined could violate the

U.S. Constitution.

**The District's Response:**

1      Q.   Number 12.

2       A.   "The policy and practice used by the District

3    to discipline employees who look through other

4    employees' personal belongings such as purses, bags,

5    clothing pockets, briefcases, et cetera.  This would

6    also include all searches that the District has

7    determined could violate the U.S. Constitution."  **Not**

**8    aware of it at all.**

Dep., pg. 15.

Topic Number 13.      All terms and promises contained in any contract between the District

and Defendant Hawk One, including, but not limited to, those terms concerning Hawk One

9

employees going into employees offices to look at the personal items of District employees.

**The District's Response:**

           9     Q.  Number 13.

           10    A.  "All terms and promises contained in any

           11  contract between the District and Defendant Hawk One,

           12  including but not limited to those terms concerning

           13  Hawk One employees going into employees' offices to

           14  look at the personal items of District employees."

          **15  Unaware of; cannot address.**

Dep., pg. 15.

    <u>Topic Number 14.</u>     The complete findings of any report prepared which found plaintiff's personal effects had been touched or moved by any person employed by any Defendant in this matter.

**The District's Response:**

           16    Q.  Number 14.

           17    A.  "The complete findings of any report prepared

           18  which found plaintiff's personal effects has been

           19  touched or moved by any person employed by any

           20  defendant in this matter."  **Unaware and cannot address.**

Dep., pg. 15.

    <u>Topic Number 15.</u>     The identification of all searches conducted by any D.C. employee, or agents, against any other D.C. employer from 2002 to the present.  The searches shall include, but

not limited to, all times that a supervisor looked through the personal items of a subordinate, whether personally touching the items or not, the date, time, place and all persons involved.

**The District's Response:**

    21   Q.  Number 15. . . .

    1   A.  "The identification of all searches conducted

    2  by any D.C. employee or agents against any other D.C.

    3  employee from 2002 to the present.  The searches shall

    4  include, but not limited to, all times that a

    5  supervisor looked through the personal items of a

    6  subordinate, whether personally touching the items or

    7  not, the date, time, place and all persons involved."

    **8  Cannot address.**

Dep., pg. 15-16.

Topic Number 16.    The method and process used to identify persons in Number 15 above.

**The District's Response:**

    9   Q.  Number 16.

    10   A.  "The method and process used to identify

    11  persons in number 15 above."  **Cannot address.**

Dep., pg. 16.

Topic Number 17.    All complaints made against Defendant Senior-Fisher from 2000 to the present.

**The District's Response:**

12    Q.   Number 17.

13    A.   "All complaints made against Defendant

14  Senior-Fisher from 2000 to the present." **Can't**

**15  address.**

Dep., pg. 16.

Topic Number 18.    The District's employees that witnessed the events complained of in

Plaintiff's complaint and their understanding of those events.

**The District's Response:**

16    Q.   Number 18?

17    A.   "The District's employees that witnessed the

18  events complained of in plaintiff's Complaint and their

19  understanding of those events." **I was not there at the**

**20  time.**

21    Q.   Nobody told you; any preparation between

22  yesterday and today?

0017

1    A.   No.

Dep., pg. 16-17.

Topic Number 19.    All training provided to Defendant Senior-Fisher concerning looking

through employees personal effects, all corrective actions taken after the events in the complaint, and

any discipline provided to Senior-Fisher after the events described in the Complaint, identify all

communications concerning this matter.

12

**The District's Response:**

    2    Q.  19.

    3    A.  "All training provided to Defendant

    4    Senior-Fisher concerning looking through employees'

    5    personal effects, all corrective actions taken after

    6    the events in the Complaint, and any discipline

    7    provided to Senior-Fisher after the events described in

    8    the Complaint, identify all communications concerning

    9    this matter."  Unaware.

    **10    Q.  That means you can't answer number 19?**

    **11    A.  No.**

Dep., pg. 17.

    <u>Topic Number 20.</u>    The investigation undertaken to answer the above 19 questions.

**The District's Response:**

    12    Q.  Number 20.

    13    A.  "The investigation undertaken to answer the

    14    above 19 questions."  No.

    **15    Q.  Can't address 20?**

    **16    A.  Cannot.**

<u>**Brief Factual Background**</u>

Myrdal brought this action to challenge the District of Columbia's policy and practices of searching their employees personal belongings, including purses, as a normal part of the work day.

13

Defendant Hawk One was brought into this action because their guards refused to permit Myrdal to move about her office space and searched through her belongings with the District of Columbia. The illegal searches took place within Ms. Myrdal's office.[1]

Myrdal was the District of Columbia's Administrator at the Maternal and Family Health Administration at the District of Columbia Department of Health during the time period at issue. November 9, 2005 Complaint, *Myrdal v. D.C., et al.* ¶ 4-5.

Prior to March 2005 the District of Columbia issued Ms. Myrdal a credit card. Ms. Myrdal never asked for the credit card and rarely used the credit card. On or about March 22, 2005 the District of Columbia cancelled their employees credit cards, including plaintiff's employer issued credit card. Plaintiff was required to return her cancelled credit card to District of Columbia employee Kenneth Wong.

On April 13, 2005 at approximately 1:40 p.m., plaintiff made arrangements to return the cancelled credit card to Mr. Kenneth Wong on April 18, 2005. Mr. Kenneth Wong is the Administrative Services Manager, Primary Care Prevention and Planning Administration and Program Coordinator for the D.C. Purchase Card Program. Later on April 13, 2005, at approximately 2:15 p.m., the District, through Paula Senior Fisher, entered Ms. Myrdal office unannounced and demanded that Ms. Myrdal provide the cancelled credit card to her. Ms. Senior-Fisher told Ms. Myrdal that the travel credit card had been suspended and that she needed it immediately.

Ms. Myrdal informed Ms. Senior Fisher that she did not have the cancelled credit card

---

[1] All facts are directly from Ms. Myrdal complaint, ¶ 4-63.

with her.  Ms. Myrdal also informed Ms. Senior Fisher of her conversations with Mr. Wong and informed Ms. Senior Fisher that she had already made arrangements with Kenneth Wong to return the card no later than April 18, 2005.

Soon after Ms. Myrdal informed Defendant Senior-Fisher that she did not have the card with her, Senior-Fisher came to Ms. Myrdal office with two **armed** security officers, Officer Roger Harris and Officer Kim Taylor.  The armed security officers worked for defendant security company and were under the control of Defendant Senior Fisher.  Officer Taylor asked Ms. Myrdal if she had the government property Ms. Senior Fisher was requesting.  Ms. Myrdal informed everyone that she did not have the cancelled credit card in her possession.  Ms. Myrdal also informed the security officers of the DOH procedure which required her to surrender the travel credit card to Kenneth Wong.  Ms. Myrdal informed the officers that she had already made arrangements with Mr. Wong to return the travel credit card on April 18, 2005 as was required by the District of Columbia.

Ms. Senior Fisher then instructed the armed officers to search Ms. Myrdal's purse and tote bag.  Ms. Myrdal never gave her consent for any of the defendants to search her personal belongings, neither her purse nor her tote bag.  The Security personnel and Ms. Senior Fisher searched Ms. Myrdal personal belongings, including her purse and tote bag, without authorization.

After searching Ms. Myrdal's personal purse and tote bag, Officer Taylor instructed Ms. Senior-Fisher to locate Mr. Wong to confirm Ms. Myrdal's earlier statements that she was required to return the cancelled card to Mr. Wong on April 18, 2005.  The armed security personnel would not permit Ms. Myrdal to leave her office and kept her imprisoned while Ms. Senior-Fisher was gone to find Mr. Wong.

At or about 2:30 p.m. on April 13, 2005, Mr. Wong was contacted by Ms. Senior Fisher and asked to report to Ms. Myrdal's office. Mr. Wong was questioned by Officer Stanley after arriving to Ms. Myrdal office. Mr. Wong acknowledged that he had instructed Ms. Myrdal to return the travel credit card to him no later than Monday, April 18, 2005. Ms. Myrdal was following the defendants' procedures in returning the cancelled credit card directly to Mr. Wong.

## II. ARGUMENT

### A. The District of Columbia is Required to Have a Knowledgeable Witness

Myrdal was entitled to have the District answer the Rule 30(b)(6) topics "directly and without evasion, in accordance with the information the deposed party possesses, after due inquiry." *Mitsui & Co. v. Puerto Rico Water Resources Authority*, 93 F.R.D. 62, 66 (D.P.R.1981). The party in question here is, of course, the District, and not the individual it chose to designate to speak for it. *See, e.g., Federal Deposit Ins. Corp. v. Butcher,* 116 F.R.D. 196, 198 (E.D.Tenn. 1986).

Rule 30(b)(6) imposes a "duty to prepare the designee[ ] . . . [that] goes beyond matters personally known to the designee or to matters in which that designee was personally involved." *Poole v. Textron, Inc.*, 192 F.R.D. 494, 504 (D.Md.2000), *citing United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C.1996). The designee must be prepared to the extent that matters are reasonably available, whether from documents, present or past employees, or other sources. *Id.* The organization is required to create a witness or witnesses with responsive knowledge. *Taylor,* 166 F.R.D. at 361.

The district court of Maryland provided a well reasoned analysis of the obligations a corporation has to prepare Rule 30(b)(6) witnesses. *Wilson v. Lakner*, 228 F.R.D. 524, 528 (D.Md. 2005). As Judge Messitte recognized:

> There can be no question that the rule imposes a duty to prepare the designee that goes beyond matters personally known to the designee or to matters in which that designee was personally involved. The designee must be prepared to the extent that matters are reasonably available, whether from documents, present or past employees, or other sources. **. . .** In no sense is a 30(b)(6) deposition limited to a witness or witnesses who can authenticate documents or identify other possible fact witnesses. (Emphasis added).

*Id.,* pg. 528 (citations and quotations omitted). A copy of the decision is attached here as Exhibit "C."

Preparing a witness in a way that would ensure that they could not answer the Rule 30(b)(6) Topic is not in keeping with the requirements that discovery should be liberally construed. The deposition-discovery rules must be broadly and liberally construed. *Hickman v. Taylor,* 329 U.S. 495, 507 (1947) (deposition-discovery rules are to be accorded a broad and liberal treatment.)*; Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 25 Fed. R. Serv. 3d 761 (8th Cir. 1993) (a party is responsible for their counsel's actions).

## B. Myrdal Was Prejudiced by the District's Failure to Provide Rule 30(b)(6) Testimony

In the context of Rule 37 motions "prejudice" "exists if the failure to make discovery impairs the opponent's ability to determine the factual merits of the party's claim." *Avionic Company v. General Dynamics Corporation*, 957 F.2d 555, 559 (8th Cir. 1992). "Dilatory, evasive tactics and deliberate, repeated failures to comply with discovery orders justify dismissal and default judgment under Rule 37." *Olson v. Chanute Production Credit Association*, 61 B.R. 384, 387 (U.S.B.C. D. Kans.); *citing Kabbe v. Rotan Mosle, Inc.,* 752 F.2d 1083 (5th Cir.1985); *Davis v. Fendler,* 650 F.2d 1154 (9th Cir.1981).

In this case, Wong was not prepared to answer the Topics. The question is whether Rule 30(b)(6) should be enforced against the District in that same way other litigants are required to

follow the rules?

The District knows Myrdal is not a wealthy woman. *A Report on the Conduct of Depositions*, 131 F.R.D. 613, 614 (1990) ("The costs to clients of the current system are enormous. Indeed, cost not infrequently plays a role in a client's willingness to litigate and its ability to pursue, or defend, a litigation.") Justice Powell commented that "discovery techniques and tactics have become a highly developed litigation art--one not infrequently exploited to the disadvantage of justice." *Herbert v. Lando*, 441 U.S. 153, 179, 99 S.Ct. 1635, 1650, 60 L.Ed.2d 115 (1979). The question here is whether the Court can, or desires, to permit the civil rights litigant the opportunity for justice. M. POLLACK, *Discovery--Its Abuse and Correction*, 80 F.R.D. 219, 220 (1979). (The "improper, vexatious and obstructive interference with the progress of examinations . . . violate the letter and spirit of fair and reasonable discovery and impede and delay questioning of witnesses.")

For these reasons, Myrdal asks that the District have sanctions entered against them. In addition, she asks that her costs and fees be paid. Ms. Mydral had to pay the court reporter $188.95. A copy is attached here as Exhibit "D." Attorney fees for: (1) preparing for and taking the Rule 30(b)(6) deposition (9.4 hours); (2) consulting with defense counsel; and (3) preparing and filing this motion (6.8) total 16.2 hours. Ms. Mydral's counsel will provide a declaration, a summary of his experience, and detailed hours at the Court's request. The *Updated Laffey Rate* for plaintiff's counsel is $536 per hour (or $8,683.20). *See,* www.laffeymatrix.com. A copy of the relevant page is attached here as Exhibit "E." According the Department of Justice, the rate is $390 per hour. A copy of the relevant page is attached here as Exhibit "F."

## CONCLUSION

Plaintiff requests that the Court to order that the District is precluded from offering testimony

18

as to the subject matter of Plaintiff's October 10, 2007 Rule 30(b)(6) Notice of Deposition. In addition, Myrdal requests an award of attorneys' fees and costs in preparing for and taking the Rule 30(b)(6) depositions and in bringing this motion.

Myrdal respectfully requests the Court to enter an Order that: (1) the District failed to comply with its Rule 30(b)(6) obligations to present knowledgeable witnesses to testify about the topics set forth in the Plaintiff's Rule 30(b)(6) Notice of Deposition to Defendant, Topic numbers 1-10 and 12-20; (2) Defendant has willfully violated this Court's December 13, 2007 Order concerning the depositions of the District of Columbia; (3) Defendant District of Columbia has failed to appear for the properly noticed Rule 30(b)(6) deposition and the following designated facts shall be taken to be established for the purposes of the action:

The District deprived Myrdal of both her liberty without due process of law and her right to equal protection of the laws in violation of District of Columbia law and the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sec. 1983.; and

The District failed acted under color of law and pursuant to official policy or custom, Defendants knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis Defendant police officers in their duties to refrain from:

(a) unlawfully and maliciously harassing Myrdal who was acting in accordance with her constitutional and statutory rights, privileges, and immunities,

(b) unlawfully and maliciously arresting, imprisoning Myrdal who was acting in accordance with her constitutional and statutory rights, privileges, and immunities,

(c) conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and laws of the United States and the laws of the District of Columbia; and

19

(d) otherwise depriving Plaintiff of her constitutional and statutory rights, privileges, and immunities.; and

Myrdal also requests an award of attorneys' fees and costs in preparing for and taking the Rule 30(b)(6) deposition and in bringing this motion and any necessary Reply or related work.

Respectfully submitted,

_____/s/ William P. Farley_____
William P. Farley, D.C. Bar No. 466280
Law Office of William P. Farley, P.C.
1350 Connecticut Avenue, N.W., Suite 200
Washington, D.C. 20036
(202) 775-1550
(202) 775-0008 (fax)
farley@dccounselor.com
Counsel for Plaintiff

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARILYN SEABROOKS MYRDAL | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **C.A. No. 05 CV 02351 (RCL)** |
| | ) |
| THE DISTRICT OF COLUMBIA, et al. | ) |
| | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**ORDER**

Upon consideration of Plaintiff's Rule 37(d) Motion for an Order Precluding Defendant from Offering Testimony Concerning the Subject Matter of Plaintiff's Rule 30(b)(6) Notice of Deposition, the memorandum of points and authorities in support thereof, the Defendant's opposition, if any, thereto, Plaintiff's Reply and the record herein, it is the ___ day of _____ 2008 hereby:

ORDERED that the Plaintiff's motion be and hereby is **GRANTED**; and it is further

ORDERED that the District twice failed to comply with its Rule 30(b)(6) obligations to present knowledgeable witnesses to testify about the topics set forth in the Plaintiff's Rule 30(b)(6) Notice of Deposition to Defendant, topic numbers 1-10 and 12-20; and it is further

ORDERED Defendant violated this Court's December 13, 2007 Order concerning the Rule 30(b)(6) Deposition of the District of Columbia; and it is further

ORDERED Defendant has failed to appear for the properly noticed Rule 30(b)(6) deposition even after failing to appear being ordered to appear by the Court; and it is further

**ORDERED** and the following designated facts shall be taken to be established for the purposes of the action:

(a) The District deprived Myrdal of both her liberty without due process of law and her right to equal protection of the laws in violation of District of Columbia law and the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sec. 1983.; and

(b) The District acted under color of law and pursuant to official policy or custom in knowingly failing to instruct, supervise, control, and discipline on a continuing basis Defendant's agents in their duties to refrain from:

(a) unlawfully and maliciously harassing Myrdal who was acting in accordance with her constitutional and statutory rights, privileges, and immunities,

(b) unlawfully and maliciously arresting, imprisoning Myrdal who was acting in accordance with her constitutional and statutory rights, privileges, and immunities,

(c) conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and laws of the United States and the laws of the District of Columbia; and

(d) otherwise depriving Plaintiff of her constitutional and statutory rights,  privileges, and immunities; and it is further

**ORDERED** that the District shall pay Myrdal an award of attorneys' fees and costs in preparing for and noticing, preparing to take, and taking the Rule 30(b)(6) deposition and in bringing this motion and related litigation.

_____
ROYCE C. LAMBERTH
UNITED STATES DISTRICT COURT  JUDGE

Copies to:

William P. Farley, P.C.
1350 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 775-1550
(202) 775-0008 (fax)
farley@dccounselor.com
Counsel for Plaintiff

Leonard Lewis McCants - #328526
8701 Georgia Avenue
Suite 801
Silver Spring, Maryland 20910
mccantslaw@aol.com
Counsel for Defendant Hawk Security

Corliss Adams
Assistant Attorney General
Civil Litigation Division
General Litigation Section IV
P.O. Box 14600
Washington, DC 20044-4600
202-442-9840/fax 202-727-3625 - corliss.adams@dc.gov
Counsel for Defendant District of Columbia

Melvin Bolden, Esquire
Assistant Attorney General
Civil Litigation Division
General Litigation Section IV
P.O. Box 14600
Washington, DC 20044-4600
202-442-9840/fax 202-727-3625
Counsel for Defendant Paula Senior Fisher
Melvin.Bolden@dc.gov

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Plaintiff's Rule 37 Motion for an Order Precluding

Defendant from Offering Testimony Concerning the Subject Matter of Plaintiff's Rule 30(b)(6)

Notice of Deposition and Memorandum in Support of Her Motion was served on defendants by the

Court's Electronic Filing System, on this 5th day of January 2008 to:

> Leonard Lewis McCants - #328526
> 8701 Georgia Avenue, Suite 801
> Silver Spring, Maryland 20910
> mccantslaw@aol.com
> Counsel for Defendant Hawk Security
>
> Corliss Adams
> Assistant Attorney General
> Civil Litigation Division - General Litigation Section IV
> P.O. Box 14600
> Washington, DC 20044-4600
> 202-442-9840/fax 202-727-3625 - corliss.adams@dc.gov
> Counsel for Defendant District of Columbia
>
> Melvin Bolden, Esquire
> Assistant Attorney General
> Civil Litigation Division
> General Litigation Section IV
> P.O. Box 14600
> Washington, DC 20044-4600
> 202-442-9840/fax 202-727-3625
> Counsel for Defendant Paula Senior Fisher
> Melvin.Bolden@dc.gov
>
> Respectfully submitted,
>
>
> /s/ William P. Farley_____
> Law Office of William P. Farley, P.C.
> 1350 Connecticut Avenue, N.W.
> Suite 200
> Washington, D.C. 20036
> (202) 775-1550
> (202) 775-0008 (fax)
> farley@dccounselor.com
> Counsel for Plaintiff