0001

1       UNITED STATES DISTRICT COURT FOR THE

2           DISTRICT OF COLUMBIA

3   _____

4   Marilyn Seabrooks Mydral,        :

5           Plaintiff,        :

6       v.                :  C.A. No:

7   The District of Columbia, et al.     : 05CV2351

8           Defendants.        :

9   _____:

10              Washington, D.C.

11          Wednesday, December 19, 2007

12

13  Deposition of:

14              KENNETH WONG

15  called for oral examination by counsel for Plaintiff,

16  pursuant to notice, at the Law Offices of William P.

17  Farley, 1350 Connecticut Avenue, Suite 200, Washington,

18  D.C., before Jacqueline Schultes, Registered

19  Professional Reporter and Certified Realtime Reporter,

20  beginning at 10:17 a.m., when were present on behalf of

21  the respective parties:

22

0002

1  On behalf of Plaintiff:

2    WILLIAM P. FARLEY, ESQUIRE

3    Law Offices of William P. Farley

4    1350 Connecticut Avenue, Suite 200

5    Washington, D.C., 20036

6    (202) 775-1550

7

8  On behalf of Defendant District of Columbia:

9    C. VAUGHN ADAMS, ESQUIRE

10    Office of the Attorney General

11    District of Columbia

12    441 4th Street, Northwest, Suite 600 South

13    Washington, D.C. 20001

14    (202) 724-8519

15

16  ALSO PRESENT: Mrs. Seabrooks, Plaintiff

17

18

19

20

21

22

0003

1         C O N T E N T S

2

3  EXAMINATION BY:                  PAGE

4    Counsel for Plaintiff           4

5    Counsel for Defendant District  30

6

7  WONG DEPOSITION EXHIBITS:*       PAGE

8  1 Notice of Deposition            4

9

10

11

12

13

14

15

16

17  (* Exhibits attached to transcript)

18

19

20

21

22

0004

1        P R O C E E D I N G S

2   WHEREUPON,

3            KENNETH WONG

4   called as a witness, and having been first duly sworn,

5   was examined and testified as follows:

6        EXAMINATION BY COUNSEL FOR PLAINTIFF

7          (Wong Exhibit Number 1 marked for

8            identification.)

9   BY MR. FARLEY:

10      Q.  Good morning, Mr. Wong.  Would you state your

11  name for the record, please.

12      A.  Kenneth Wong; W-O-N-G.

13      Q.  You are here as a 30(b)6 witness on behalf of

14  the District of Columbia; is that correct?

15      A.  I just want to be sure what I have been told

16  what a 30(b)6 is.

17      Q.  Do you want your counsel to explain to you

18  off the record?

19      A.  He has explained to me, but.

20      Q.  He is an experienced attorney, so.

21          MR. ADAMS:  You are speaking on behalf of the

22  District of Columbia with regard to certain issues on

0005

1  behalf of this deposition notice.

2         THE WITNESS:  But I only pertain to the

3  credit card.  I don't want to be the expert on the City

4  because I don't think I can speak on behalf of the

5  City.  Is that fair enough?

6         MR. FARLEY:  Fair enough.

7  BY MR. FARLEY:

8     Q.  So you can't speak on behalf of the City

9  today?

10    A.  No, I'm not representing the City, as far as

11  I know.  I'm just going to speak on behalf of the

12  credit card.  There are questions that were asked that

13  I can't address on security and siege and search.

14    Q.  Let's go through it and you can tell me which

15  topics you can answer to.  The topics begin on page 4.

16  This is Exhibit B to the plaintiff's motion that the

17  Judge ordered the District of Columbia to comply with.

18        MR. ADAMS:  I will say it is one of the

19  exhibits of the Judge's motion that you attached to

20  your motion to compel.  There were two notices of

21  deposition attached to that motion.

22        MR. FARLEY:  This is the only October 10th

0006

1  one, I think you'll agree.

2         THE WITNESS:  I received this yesterday,

3  October 17th.

4         MR. FARLEY:  December 18th?

5         THE WITNESS:  The 18th, yesterday.  It was

6  e-mailed to me.

7  BY MR. FARLEY:

8     Q.  Let's go through the ones that you can't

9  answer.

10    A.  The first question is on policy procedure.  I

11  think I can address that one.

12    Q.  You can do every aspect of it?  Have you

13  spoken to anybody about number 1?

14    A.  No, I'm not the expert.  I'm only within the

15  Department of Health.  I don't make the policy.  That's

16  issued by the City.

17    Q.  Right.  Who would be better to answer that

18  one?

19    A.  Somebody from OCP, Office of Contracts and

20  Procurement, but how it applies to Department of

21  Health, I can speak on it.

22    Q.  Do you know if that is the policy as applied

0007

1  to the Department of Health that's in the whole

2  District?

3      A.  Yeah.  Each card holder, prior to receiving a

4  card, has to attend a training from OCP at which time

5  they are informed prior to the training to download the

6  policy and procedure directive that's online.  I think

7  you have a copy.  It's this document right here.

8      Q.  I looked through this.  This is the

9  procurement policy and procedure directive.  In

10  question number 1 it says, "to recover the

11  government-issued credit cards."  Is there anything in

12  this document that you provided to me -- it looks to be

13  about 70 pages or so --

14      A.  I think it's about 98 pages.

15      Q.  It says procurement policy and procedure

16  directive.  That speaks to the District recovering

17  credit cards from employees?

18      A.  The policy is when a card is to be returned,

19  it is the property of the District Government and the

20  card is to be returned to the APC, which is Agency

21  Procurement Coordinator, which is what I am for the

22  Department of Health.

0008

1    Q.  So for the Department of Health -- Mrs.

2  Mydral is also known as Mrs. Seabrooks, so let's call

3  her Mrs. Seabrooks for today; is that okay?

4    A.  Yes.  She returned the card to me.

5    Q.  That's who she was supposed to return it to?

6    A.  Yes.

7    Q.  Is there anything in this procurement policy

8  and procedure directive that gives anybody the right to

9  search Mrs. Seabrooks' personal belongings?

10    A.  Not that I'm aware of.

11    Q.  Before we get deep into these questions, tell

12  me which questions you can't answer.

13    A.  Number 1, I think, I can talk on.

14    Q.  You can't answer fully to --

15    A.  No.

16    Q.  -- about the policy?

17    A.  No.

18    Q.  How about number 2, could you read number 2

19  for the record.

20    A.  "The official policy which has been adopted

21  by the District of Columbia to train their employees

22  for searching other employees' personal property."  I

0009

1  can't address that.

2    Q.  And number 3?

3    A.  "The formal rules or understanding provided

4  to District of Columbia employees intended to establish

5  fixed plans of actions to be followed under

6  circumstances described in the Complaint to obtain the

7  return of plaintiff's government-issued credit card."

8  It's just that they are to return it to me after the

9  rulings from the agency review team.

10    Q.  Did you read Mrs. Seabrooks' Complaint

11  against the District of Columbia?

12    A.  What do you mean?

13    Q.  Did you see the Complaint she filed in the

14  District Court?

15    A.  Yes.

16    Q.  You read the whole Complaint?

17    A.  Yes.

18    Q.  Did you read all the circumstances in there

19  including the searching of her belongings?

20    A.  Yes, but I was not there when it happened.

21  Whatever I know is hearsay because I was at another

22  meeting and I was called into her -- well, not called.

0010

1  I was notified to come into her office.  So whatever

2  happened happened prior to me coming down.

3      Q.  Just so I'm clear, you know that the card

4  should have been returned to you, but you don't know

5  the formal rules or understandings provided to other

6  District of Columbia employees intended to establish

7  fixed plans of actions to be followed under

8  circumstances describing the plan, that is, to search

9  Mrs. Seabrooks' personal belongings --

10     A.  I know nothing about searching and as far as

11  I know it's not addressed in the policy and procedure.

12     Q.  But it could be addressed in another document

13  that you're not aware of?

14        MR. ADAMS:  Objection; leading.

15        THE WITNESS:  I don't know.  I've never been

16  searched and I don't know of anybody else who has been.

17  If there's a policy, I know nothing of it.

18  BY MR. FARLEY:

19     Q.  But there could be a policy?

20     A.  Anything's possible.

21     Q.  There's a lot of things about the District

22  that you don't know, correct, even though you've been

0011

1  there for a long time --

2        MR. ADAMS:  Objection; leading.

3  BY MR. FARLEY:

4     Q.  You can answer.

5     A.  I'm sure there are a lot of policies.

6     Q.  Number 4, can you read that for the record.

7     A.  "The names and responsibilities of the policy

8  makers that determined the District of Columbia's

9  policy on the searching of employees' personal

10  belongings as of April 13, 2005." I can't address,

11  once again.

12     Q.  Number 5, would you read that for the record.

13     A.  "When, where, why and upon whose direction

14  any documents responsive to plaintiff's discovery

15  requests were destroyed, the identity of those

16  documents and the date they were destroyed, the

17  identity of any person who has destroyed documents

18  relating to any of plaintiff's claims and the person

19  responsible for preserving such documents." I cannot

20  address that either.

21     Q.  And number 6?

22     A.  "The sum and substance of each and every

0012

1  communication between the defendant or its employees,

2  and any investigator or person involved in

3  investigating plaintiff's government-issued credit card

4  that was discussed..."  I do not know.

5     Q.  Could you just finish that?

6     A.  "...government-issued credit card that was

7  discussed by the plaintiff and defendant on April

8  13th."  I can't discuss every issue.  I mean, I'm not

9  aware of every issue.  Whatever issue, communication, I

10  have is maintained in the OCFO's office, the office of

11  the chief financial officer.  That's where they keep

12  all the records of credit cards.

13     Q.  Do you know how many investigators were

14  appointed to this case?

15     A.  No.

16     Q.  Do you know the name of all the persons

17  involved in investigating this?

18     A.  Do I know the guard's name or anything, is

19  that what you're saying?  No, other than Marilyn and

20  Senior-Fisher.

21     Q.  Number 7, could you read that for the record,

22  please.

0013

1    A.  "The process used and the persons involved in

2  creating the standards used for investigating

3  plaintiff's government-issued credit card that was

4  relinquished by her on April 14, 2005, the standards

5  used, when those standards were developed, who

6  developed those standards."  No, I do not.

7    Q.  And number 8.

8    A.  "The date Defendant District of Columbia

9  became aware that Mrs. Seabrooks was being investigated

10  for failing to return her credit card and the names and

11  responsibilities of all those involved in that

12  investigation, including but not limited to any person

13  responsible to review or scan of her personal

14  belongings."  I can't address that either because I

15  don't know who took her personal belongings.

16    Q.  And number 9.

17    A.  "Whether there has been, and the number of

18  investigations Defendant District of Columbia had taken

19  concerning any claim made by Mrs. Seabrooks in this

20  matter, the date the investigation was undertaken, and

21  the identity of any person involved in the

22  investigation, including but not limited to the persons

0014

1  investigated and the identity of the investigators."

2  Once again, I am not aware who investigated or why.

3     Q.  And number 10, please.

4     A.  "All information and standards of the

5  District of Columbia's policies and procedures

6  concerning the use of private security firms to mediate

7  disputes and search employees' belongings."  I don't

8  know anything about that either.

9     Q.  Number 11.

10    A.  "All steps taken by any person to prepare to

11 answer these Rule 30(b)6 questions, including the date

12 preparation began and who was consulted, other than

13 attorneys."

14    Q.  You can speak only to yourself?

15    A.  Yes.

16       MR. ADAMS:  I would object to that.  That was

17 leading.  I don't even think there was a question

18 asked.

19 BY MR. FARLEY:

20    Q.  You can't speak as to anyone else that might

21 have been consulted?

22    A.  No.

0015

1    Q.  Number 12.

2    A.  "The policy and practice used by the District

3  to discipline employees who look through other

4  employees' personal belongings such as purses, bags,

5  clothing pockets, briefcases, et cetera.  This would

6  also include all searches that the District has

7  determined could violate the U.S. Constitution."  Not

8  aware of it at all.

9    Q.  Number 13.

10    A.  "All terms and promises contained in any

11  contract between the District and Defendant Hawk One,

12  including but not limited to those terms concerning

13  Hawk One employees going into employees' offices to

14  look at the personal items of District employees."

15  Unaware of; cannot address.

16    Q.  Number 14.

17    A.  "The complete findings of any report prepared

18  which found plaintiff's personal effects has been

19  touched or moved by any person employed by any

20  defendant in this matter."  Unaware and cannot address.

21    Q.  Number 15.

22

0016

1     A.  "The identification of all searches conducted

2  by any D.C. employee or agents against any other D.C.

3  employee from 2002 to the present.  The searches shall

4  include, but not limited to, all times that a

5  supervisor looked through the personal items of a

6  subordinate, whether personally touching the items or

7  not, the date, time, place and all persons involved."

8  Cannot address.

9     Q.  Number 16.

10     A.  "The method and process used to identify

11  persons in number 15 above."  Cannot address.

12     Q.  Number 17.

13     A.  "All complaints made against Defendant

14  Senior-Fisher from 2000 to the present."  Can't

15  address.

16     Q.  Number 18?

17     A.  "The District's employees that witnessed the

18  events complained of in plaintiff's Complaint and their

19  understanding of those events."  I was not there at the

20  time.

21     Q.  Nobody told you; any preparation between

22  yesterday and today?

0017

1    A.  No.

2    Q.  19.

3    A.  "All training provided to Defendant
4  Senior-Fisher concerning looking through employees'
5  personal effects, all corrective actions taken after
6  the events in the Complaint, and any discipline
7  provided to Senior-Fisher after the events described in
8  the Complaint, identify all communications concerning
9  this matter."  Unaware.

10    Q.  That means you can't answer number 19?

11    A.  No.

12    Q.  Number 20.

13    A.  "The investigation undertaken to answer the
14  above 19 questions."  No.

15    Q.  Can't address 20?

16    A.  Cannot.

17    Q.  So just for the record, you can talk to a
18  part of number 1, right?

19    A.  Yes.

20    Q.  Number 3 you can tell -- can you answer
21  number 3 at all?

22    A.  I can talk on it, yes, I think.