THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| MARILYN SEABROOKS MYRDAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No: 05 CV 02351 (RCL) |
| ) | |
| ) | |
| DISTRICT OF COLUMBIA, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S RULE 37(d) MOTION FOR AN ORDER PRECLUDING
DEFENDANT FROM OFFERING TESTIMONY CONCERNING THE SUBJECT
MATTER OF PLAINTIFF'S RULE 30(b)(6) NOTICE OF DEPOSITION AND
<u>MEMORANDUM IN SUPPORT OF HER MOTION</u>**

Defendant District of Columbia ("the District"), by and through undersigned counsel, hereby submits the following Memorandum of Points and Authorities in Opposition to Plaintiff's Rule 37(d) Motion for an Order Precluding Defendant from Offering Testimony Concerning the Subject Matter of her Rule 30(b)(6) Deposition.

As grounds therefore, the District states as follows:

Plaintiff's motion is without merit. Mr. Wong was fully capable of testifying to the subject matters in Plaintiff's 30(b)(6) Notice and did testify to those matters in his deposition. Those questions related to the issuance, use and revocation of government credit cards to government employees. Plaintiff barely addressed this topic in her deposition and even attempted to prevent Defendant's counsel from questioning Mr. Wong on this topic in re-direct. The matters which Plaintiff claims Mr. Wong did not testify about—searches and seizures of

1

government employee belongings-- are matters that NO ONE could testify about because there is NO POLICY or practice of the District of Columbia regarding searches and seizures of its employees and their belongings. There is no basis for sanctions in this case because Defendant has fully complied as much as is possible with the 30(b)(6) Notice. Plaintiff's "topics" that were not addressed by Mr. Wong cannot be addressed by anyone because they have no basis in fact.

### THE DEPOSITION

Mr. Wong appeared at his deposition on December 19, 2007, as ordered by this court. Prior to his appearance, he was prepared as a witness by meeting with both Agency counsel and the undersigned. Mr. Wong was provided a copy of the Complaint, the Notice of Deposition and studied the appropriate regulations relative to the issuance of government credit cards. Mr. Wong is the Agency official directly responsible for issuance of government credit cards in this Agency. It should be noted that Mr. Wong also has some personal knowledge of the events in this case, as he happened upon the confrontation between Plaintiff and Defendant Senior-Fisher that is at the heart of this lawsuit. Plaintiff had direct interaction with Mr. Wong regarding her credit card and returned the card to him. Needless to say, Mr. Wong is fully versed in the rules, policies and procedures relating to the issuance of government credit cards. He was the absolute best designee for this deposition.

Plaintiff's Notices of Deposition morphed from a 30(b)(6) deposition about the use of credit cards to a 30(b)(6) deposition about a non-existent policy of the District of Columbia relating to searches and seizures of government employees and their property. Plaintiff presented Defendants with TWO 30(b)(6) Notices of Deposition. See, Exhibits A & B attached hereto. One was served September 7, 2007 and the other was served on October 10, 2007. Both were attached to Plaintiff's Motion for Rule 37 Sanctions, filed October 26, 2007. The First Notice of

Deposition listed 11 topics for discussion in the deposition and the second lists 20 topics. This discrepancy is significant because Plaintiff is attempting to misrepresent Mr. Wong's preparation for this deposition.

Mr. Wong was first presented with Plaintiff's FIRST 30(b)(6) Notice in September when it was first issued. Exhibit A. Mr. Wong went over that Notice with Agency counsel and prepared himself to testify to the topics in that Notice which related mainly to the use of government credit cards. Plaintiff's Second 30(b)(6) Notice had the same topics as the first but then *added* 9 more topics relating to the searches of government employees and the alleged search of Plaintiff. [*cf.*, Exhibit's A & B]. These added topics are topics that no witness for the District could address.

**MR. WONG ADDRESSED THE TOPICS IN THE NOTICES OF DEPOSITION THAT COULD BE ADDRESSED. THE OTHER TOPICS RELATING TO SEARCHES COULD NOT BE ADDRESSED BY ANYONE BECAUSE THEY DO NOT EXIST**

Plaintiff has set up a straw man issue of an official policy of the District of Columbia for search and seizure of its employees to support her claim under 42 U.S.C. 1983. Unfortunately for the Plaintiff, she can point to no such policy or policies of the District of Columbia regarding searches of employees. It is out of desperation that Plaintiff is now attempting to squeeze sanctions out of the Defendant for her misunderstanding of the law.

**PLAINTIFF SUFFERED NO PREJUDICE**

Plaintiff suffered no prejudice from the District's capable Rule 30(b)(6) witness because there was no "failure to make discovery". The "discovery" that Plaintiff claims she was not provided simply does not exist. The topics that Mr. Wong was able to address were addressed in his deposition when he was questioned by counsel for the Defendants. Plaintiff's counsel was apparently not interested in even questioning Mr. Wong about issues he was fully prepared to

address: facts and policies related to the issuance, use, misuse and recovery of government credit cards. To the contrary, Plaintiff's counsel went out of his way to *avoid* these topics and to question Mr. Wong about legal conclusions and arguments found in the Complaint (that was drafted by Plaintiff's counsel) that all related to a non-existent "policy" relating to searches.1

Most of the topics Plaintiff claims Defendant failed to provide a competent witness to testify are topics that NO ONE could address because they are based upon a misapprehension of the Plaintiff

---

1 Counsel's questioning of Mr. Wong bordered on the bizarre. Plaintiff walked Mr. Wong through the Complaint and even attempted to make him testify about legal theories and conclusions. To wit, the deposition at pp. 27-28:
```
 3  "BY MR. FARLEY:
 4     Q.  Number 54: "Defendant policy or custom to
 5  search employees' purses or handbags in these types of
 6  situations is unconstitutional."
 7        MR. ADAMS:  Objection.  That calls for a
 8  legal conclusion.  This man is not here as a legal
 9  expert.
10  BY MR. FARLEY:
11     Q.  Can you answer that question as it relates to
12  number 53?
13     A.  I'm not aware of that.
14     Q.  Number 55: "D.C.'s official policy or custom
15  inflicted the injury here."  Do you know D.C.'s
16  official policy or custom that was in place here?
17     A.  I do not.
18     Q.  Number 56: "D.C.'s policy or custom was the
19  moving force in depriving plaintiff of her
20  constitutional rights."  Do you know --
21        MR. ADAMS:  Objection --
22        THE WITNESS:  I can't address that.
0028
 1  BY MR. FARLEY:
 2     Q.  Number 65, on page 9: "Defendants acted
 3  under the collar [sic]of state law within the meaning of
 4  Section 1983 when they exercised the power possessed by
 5  virtue of state law and made possible only because they
 6  were clothed with the authority of state law."  Can you
 7  address that, Mr. Wong?
 8     A.  No.
 9        MR. ADAMS:  Just to make a standing objection
10  to any of these questions relating to conclusions of
11  law, interpretations of statute, Constitution of the
12  United States.  It's beyond the scope of a 30(b)6
13  deposition, what this deposition was called for.
14  Mr. Wong is not an attorney and he was not asked to
15  come here and give legal opinions.  I don't want to cut
16  up the record by continuing to make objections, but
```

that there is some policy of the District of Columbia to regulate searches of its employees.  <u>There is no such policy</u>.  Mr. Wong articulated this fact when questioned by counsel for the Defendants. To wit:

By Mr. Adams at pp. 36-37, Exhibit 3.

```
 5      Q.  Are there any particular forms or letters
 6   that are used in revoking these cards?
 7      A.  The person is informed that their card is
 8   being revoked, suspended or terminated, and a copy of
 9   that is given to the employee or the credit card holder
10   and is then forwarded over to OCP for their official
11   document file.
12      Q.  Mr. Farley had asked you some questions
13   regarding policy for searches.  I think that was at
14   number 35 -- paragraph 35 in the Complaint.  In any
15   case, are you aware of any policy that relates to
16   searching?
17      A.  No, I'm not.
18      Q.  Of employees, personally?
19      A.  No.
20      Q.  Do you know whether the District of Columbia
21   authorized Ms. Senior-Fisher to conduct any searches of
22   Ms. Mydral?
0037
 1      A.  No, I do not.
 2      Q.  In your procurement policy that you referred
 3   to, 9000.01, is there a procedure in there for revoking
 4   credit cards having been issued to government
 5   employees?
 6      A.  Yes.
 7      Q.  And is there any procedure in that manual
 8   that would direct a supervisor to conduct a search of
 9   an employee in an effort to return a credit card?
10      A.  No, that I'm aware of.
11          MR. ADAMS:  I don't have any other questions
12   for Mr. Wong at this time.
13          MR. FARLEY:  I'm all done, too.
14          (Whereupon, at 11:01 a.m., the deposition of
15           KENNETH WONG was concluded.)
16             * * * * *
```

---

17 proceed."

Mr. Wong made it clear that he was not aware of any policy that permitted the search and seizure of employees. This was after being prepared by both Agency counsel and counsel from the Office of the Attorney General. As testified to by Mr. Wong, the official policy regarding use of credit cards does not address search employees for credit cards. It only follows, then that there could be no representative to discuss a non-existent policy.

Mr. Wong's inability to give Plaintiff's what they wanted on D.C.'s alleged policy for searching employees does not rise to the level of sanctionable activity. An inability to fully testify on all topics set forth in a Rule 30(b)(6) notice is not tantamount to a complete failure of the corporate designee to appear that would justify sanctions. *See*, Belmont Holdings Corp. v. Unicare Life & Health Ins. Co., 2000 U.S. Dist. LEXIS 17353 (Civil Action 98-2365 ,U.S.D.C. E.D. Pa., Dec. 2000), *citing* United States v. Massachusetts Indus. Fin. Agency, 162 F.R.D. 410, 412 (D. Mass. 1995); United States of America and New England Adolescent Research Institute, Inc. v. Massachusetts Industrial Finance Agency, 162 F.R.D. 410, 19915 U.S. Dist. LEXIS 18549 (D. Mass. 1995). This is even more poignant when the topics that the witness was unable to address are topics that no one could address and, therefore, cannot possibly assist the Plaintiff in the prosecution of her claims.

Hollow claims of "prejudice" by a plaintiff for the purported inability of defendants to address 30(b)(6) deposition topics has been addressed in this Court previously. In Banks v. Office of The Senate Sergeant-At-Arms and Doorkeeper, 241 F.R.D.370, 2007 U.S. Dist. LEXIS 21211 (D.C.D.C.)(attached hereto as Exhibit 4), Magistrate Judge Facciola determined that the Plaintiff suffered no prejudice from the inability of the 30(b)(6) witness to answer all of the topics in Plaintiff's 30(b)(6) Notice of Deposition. Counsel for the Plaintiff is intimately familiar with Banks, as he was lead counsel for the Plaintiff in that matter. See, Exhibit 4.

In Banks, Mr. Farley argued that the 30(b)(6) witness was not adequately prepared because the witness would not agree to *counsel's* interpretation that his meetings with the Plaintiff were not investigations but was "counseling". When the witness testified that he had no knowledge of "counseling" (but was fully able to testify about his investigative activities) counsel attempted to portray the Defendants as being non-cooperative in discovery and having failed to adequately prepare their witness. Exhibit 4 at page 375. Further, Plaintiff was attempting to make the 30(b)(6) witness investigate his case for him. This strawman/twisted semantics tactic of the Plaintiff was rejected by Judge Facciola.

Judge Facciola determined that the designated deponent need only be prepared "to the extent that matters are *reasonably available*." *Wilson v. Lakner, 228 F.R.D. 524, 528 (D. Md. 2005)*(emphasis added). As the court acknowledged, "[o]bviously a rule of reason applies." *Id. at 528.* In Banks, Judge Facciola's language was instructive regarding the "prejudice" claimed to have been suffered by the Plaintiff in that matter:

> "The only prejudice possible in this instance is the inability to secure irrelevant information that cannot serve as the basis for any aspect of Plaintiff's remaining claims. Notwithstanding the confusion inherent in Plaintiff's position and the Defendant's response, it is unreasonable to base sanctions on the failure to provide irrelevant information, especially a sanction as severe as to effectively find in favor of the Plaintiff and end the litigation entirely." Banks at p. 375.

There, as here, Plaintiff pushed for discovery and testimony that was not only irrelevant but attempted to portray the defendants as being non-cooperative in discovery by confusing the issues through artful pleading and semantics. Similarly, in this case, counsel for the Plaintiff has set up a strawman argument to portray the Defendant District of Columbia as being non-cooperative in discovery: Plaintiff notices a deposition loaded with topics that no witness or set of witness could address; Plaintiff convenes a sham 30(b)(6) deposition and focuses only on the

7

topics she *knows* the witness cannot answer;  Plaintiff refuses to ask any questions on topics that the witness is prepared to answer; Plaintiff files motion for sanctions and costs claiming Defendant failed to prepare it's witness.  This is exactly what Plaintiff is up to and it fits the pattern of prior conduct by Plaintiff's counsel in the Banks matter. This is "déjà vu all over again", and the result should be the same as in Banks—the motion should be denied.

Plaintiff's motion should be denied because there is no 30(b)(6)  witness available to testify to the topics that Plaintiff wants addressed. As such, Plaintiff has suffered no prejudice from Mr. Wong's appearance at the 30(b)(6) deposition. Defendant should not be precluded from addressing the topic of searches and seizures of employees at trial because that would give Plaintiff the unfair advantage of presenting a false position to the jury that there is a policy of the District to allow searches of its employees.  There is no such policy and Plaintiff has the burden of demonstrating the existence of this alleged policy.  Defendant is not required to make up a policy where none exists to support Plaintiff's legal theories.

Plaintiff asks that this court make findings of law and fact adverse to the Defendant as a sanction.  As was articulated in Banks, "Plaintiffs arguments cannot possibly merit the sanctions [s]he proposes".  Plaintiff is asking this Court to find that Defendant violated her rights under the Constitution and acted according to an official policy or custom under color of law in violation of 42 U.S.C. 1983, etc. Plaintiff is overreaching.

Plaintiff is asking this court to declare that there is a policy of the District of Columbia to search its employees when there is no such policy. Such a finding would be clearly erroneous as a matter of law. The one time actions of a single, mid-level management employee simply cannot be the basis of an official policy or custom of the District of Columbia for Section 1983 liability. Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690 (1978); Kentucky v. Graham, 473

U.S. 159, 166 (1985). The person making the decision must be a policymaker who has final decision making authority and not merely exercising discretion. *Pembaur v. Cincinnati*, 475 U.S. 469, 483 n. 12 (1986). *See also St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988) ("If the mere exercise of discretion by an employee could give rise to a constitutional violation [justifying municipal liability] the result would be indistinguishable from *respondeat superior* liability.") . In this case, Defendant Carolyn Senior-Fisher, a mid level manager (Interim Deputy Director), is accused of ordering the seizure and search of the Plaintiff. Defendant Senior-Fisher's alleged behavior cannot bind the District of Columbia because she does not have "final policymaking authority." *Praprotnik*, *supra*, 485 U.S. at 123. Instead, for municipal liability to lie, the municipal policy *itself*, and not its application by the employee, must be the "moving force" behind the violation—i.e. the policy *itself* must have caused the violation. *See*, *City of Canton v. Harris*, 489 U.S. 378, 378 (1988); *see also Pembaur*, *supra*, 475 U.S. at 479 ("The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* in order to limit municipal liability to conduct for which the municipality is actually responsible") (emphasis in original).

In prosecuting a 1983 action, it is the *Plaintiff's* burden to establish that such a policy even exists. At a minimum, the Plaintiff must at least articulate where this policy is found or, in the event that it is an unwritten policy or custom, at least show other instances where this policy or custom was carried out. Plaintiff has utterly failed in both instances because there is no such policy or custom. A finding by this Court that there was such a policy would be contrary to the facts and to the law and would likely be reversed on appeal.

Plaintiff is not entitled to costs for this deposition or for her attorney's fees. The

deposition was not rendered futile because the witness did not testify exactly as she wished. The witnessed was called to testify to the truth and he did. He was prepared for the deposition and testified to topics that were capable of being testified to. Plaintiff is not entitled to sanctions just because a witness fails to support her theory of the case.

WHEREFORE, for the foregoing reasons, the District moves this Court to deny Plaintiff's Motion Pursuant to Rule 37(d).

          Respectfully submitted,

          PETER J. NICKLES
          Interim Attorney General
          For the District of Columbia

          GEORGE C. VALENTINE
          Deputy Attorney General
          Civil Litigation Division

          /s/ Patricia A. Jones_____
          PATRICIA A. JONES [428132]
          Section Chief
          General Litigation Section IV

          /s/ C. Vaughn Adams_____
          C. VAUGHN ADAMS [449770]
          Assistant Attorney General
          441 4th Street, N.W., 6S-066
          Washington, D.C. 20001
          (202) 724-6519
          (202) 727-3625 (fax)
          corliss.adams@dc.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 14th day of January, 2008, that a copy of the foregoing Memorandum of Points and Authorities in Opposition to Plaintiff's Motion Pursuant to Rule 37(d) was delivered via the U.S. District Court's electronic notification system or mailed postage prepaid to:

William Farley, Esq.
Law Office of William P. Farley, P.C.
1350 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036

Leonard McCants, Esq.
The Law Office of Leonard McCants
8701 Georgia Avenue
Silver Spring, MD 20910

Melvin Bolden, Esq.
Assistant Attorney General
Office of the Attorney General
For the District of Columbia
441 4th Street, N.W. 6th Floor South
Washington, D.C. 20001

    /s/ C. Vaughn Adams
C. Vaughn Adams
Assistant Attorney General

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

| | | |
|---|---|---|
| **MARILYN SEABROOKS MYRDAL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No: 05 CV 02351 (RCL) |
| | ) | |
| | ) | |
| **DISTRICT OF COLUMBIA, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**O R D E R**

Upon consideration of Plaintiff's Motion Pursuant to Rule 37(d), Defendant District of Columbia's Opposition thereto, and the facts and law considered, it is hereby ORDERED;

The Motion is DENIED.

So ORDERED this _____ day of _____, 2007.


_____
Hon. Royce C. Lamberth
United States District Judge


copies to:

C. Vaughn Adams
Assistant Corporation Counsel
441 4th Street, N.W.
6th Floor South
Washington, D.C. 20001

William Farley, Esq.
Law Office of William P. Farley, P.C.
1350 Connecticut Avenue, N.W.
Suite 200

Washington, D.C. 20036

Leonard McCants, Esq.
The Law Office of Leonard McCants
8701 Georgia Avenue
Silver Spring, MD 20910

Melvin Bolden, Esq.
Assistant Attorney General
Office of the Attorney General
For the District of Columbia
441 4th Street, N.W. 6th Floor South
Washington, D.C. 20001