0001

1        UNITED STATES DISTRICT COURT FOR THE

2            DISTRICT OF COLUMBIA

3  _____

4  Marilyn Seabrooks Mydral,          :

5            Plaintiff,        :

6        v.                 : C.A. No:

7  The District of Columbia, et al.     : 05CV2351

8            Defendants.       :

9  _____:

10                 Washington, D.C.

11             Wednesday, December 19, 2007

12

13  Deposition of:

14          KENNETH WONG

15  called for oral examination by counsel for Plaintiff,

16  pursuant to notice, at the Law Offices of William P.

17  Farley, 1350 Connecticut Avenue, Suite 200, Washington,

18  D.C., before Jacqueline Schultes, Registered

19  Professional Reporter and Certified Realtime Reporter,

20  beginning at 10:17 a.m., when were present on behalf of

21  the respective parties:

22

0002

1   On behalf of Plaintiff:

2     WILLIAM P. FARLEY, ESQUIRE

3     Law Offices of William P. Farley

4     1350 Connecticut Avenue, Suite 200

5     Washington, D.C.,  20036

6     (202) 775-1550

7

8   On behalf of Defendant District of Columbia:

9     C. VAUGHN ADAMS, ESQUIRE

10     Office of the Attorney General

11     District of Columbia

12     441 4th Street, Northwest, Suite 600 South

13     Washington, D.C.  20001

14     (202) 724-8519

15

16   ALSO PRESENT:  Mrs. Seabrooks, Plaintiff

17

18

19

20

21

22

0003

1          C O N T E N T S

2

3    EXAMINATION BY:                    PAGE

4       Counsel for Plaintiff            4

5       Counsel for Defendant District       30

6

7    WONG DEPOSITION EXHIBITS:*           PAGE

8    1 Notice of Deposition            4

9

10

11

12

13

14

15

16

17   (* Exhibits attached to transcript)

18

19

20

21

22

0004

1          P R O C E E D I N G S

2   WHEREUPON,

3                    KENNETH WONG

4   called as a witness, and having been first duly sworn,

5   was examined and testified as follows:

6        EXAMINATION BY COUNSEL FOR PLAINTIFF

7        (Wong Exhibit Number 1 marked for

8          identification.)

9   BY MR. FARLEY:

10     Q.   Good morning, Mr. Wong.  Would you state your

11   name for the record, please.

12     A.   Kenneth Wong; W-O-N-G.

13     Q.   You are here as a 30(b)6 witness on behalf of

14   the District of Columbia; is that correct?

15     A.   I just want to be sure what I have been told

16   what a 30(b)6 is.

17     Q.   Do you want your counsel to explain to you

18   off the record?

19     A.   He has explained to me, but.

20     Q.   He is an experienced attorney, so.

21        MR. ADAMS:  You are speaking on behalf of the

22   District of Columbia with regard to certain issues on

0005

1  behalf of this deposition notice.

2       THE WITNESS:  But I only pertain to the

3  credit card.  I don't want to be the expert on the City

4  because I don't think I can speak on behalf of the

5  City.  Is that fair enough?

6       MR. FARLEY:  Fair enough.

7  BY MR. FARLEY:

8    Q.  So you can't speak on behalf of the City

9  today?

10     A.  No, I'm not representing the City, as far as

11  I know.  I'm just going to speak on behalf of the

12  credit card.  There are questions that were asked that

13  I can't address on security and siege and search.

14     Q.  Let's go through it and you can tell me which

15  topics you can answer to.  The topics begin on page 4.

16  This is Exhibit B to the plaintiff's motion that the

17  Judge ordered the District of Columbia to comply with.

18       MR. ADAMS:  I will say it is one of the

19  exhibits of the Judge's motion that you attached to

20  your motion to compel.  There were two notices of

21  deposition attached to that motion.

22       MR. FARLEY:  This is the only October 10th

0006

1  one, I think you'll agree.

2       THE WITNESS:  I received this yesterday,

3  October 17th.

4       MR. FARLEY:  December 18th?

5       THE WITNESS:  The 18th, yesterday.  It was

6  e-mailed to me.

7  BY MR. FARLEY:

8     Q.  Let's go through the ones that you can't

9  answer.

10     A.  The first question is on policy procedure.  I

11  think I can address that one.

12     Q.  You can do every aspect of it?  Have you

13  spoken to anybody about number 1?

14     A.  No, I'm not the expert.  I'm only within the

15  Department of Health.  I don't make the policy.  That's

16  issued by the City.

17     Q.  Right.  Who would be better to answer that

18  one?

19     A.  Somebody from OCP, Office of Contracts and

20  Procurement, but how it applies to Department of

21  Health, I can speak on it.

22     Q.  Do you know if that is the policy as applied

0007

1  to the Department of Health that's in the whole

2  District?

3      A.  Yeah.  Each card holder, prior to receiving a

4  card, has to attend a training from OCP at which time

5  they are informed prior to the training to download the

6  policy and procedure directive that's online.  I think

7  you have a copy.  It's this document right here.

8      Q.  I looked through this.  This is the

9  procurement policy and procedure directive.  In

10  question number 1 it says, "to recover the

11  government-issued credit cards."  Is there anything in

12  this document that you provided to me -- it looks to be

13  about 70 pages or so --

14      A.  I think it's about 98 pages.

15      Q.  It says procurement policy and procedure

16  directive.  That speaks to the District recovering

17  credit cards from employees?

18      A.  The policy is when a card is to be returned,

19  it is the property of the District Government and the

20  card is to be returned to the APC, which is Agency

21  Procurement Coordinator, which is what I am for the

22  Department of Health.

0008

1    Q.   So for the Department of Health -- Mrs.

2    Mydral is also known as Mrs. Seabrooks, so let's call

3    her Mrs. Seabrooks for today; is that okay?

4    A.   Yes.  She returned the card to me.

5    Q.   That's who she was supposed to return it to?

6    A.   Yes.

7    Q.   Is there anything in this procurement policy

8    and procedure directive that gives anybody the right to

9    search Mrs. Seabrooks' personal belongings?

10    A.   Not that I'm aware of.

11    Q.   Before we get deep into these questions, tell

12    me which questions you can't answer.

13    A.   Number 1, I think, I can talk on.

14    Q.   You can't answer fully to --

15    A.   No.

16    Q.   -- about the policy?

17    A.   No.

18    Q.   How about number 2, could you read number 2

19    for the record.

20    A.   "The official policy which has been adopted

21    by the District of Columbia to train their employees

22    for searching other employees' personal property."  I

0009

1  can't address that.

2      Q.  And number 3?

3      A.  "The formal rules or understanding provided

4  to District of Columbia employees intended to establish

5  fixed plans of actions to be followed under

6  circumstances described in the Complaint to obtain the

7  return of plaintiff's government-issued credit card."

8  It's just that they are to return it to me after the

9  rulings from the agency review team.

10     Q.  Did you read Mrs. Seabrooks' Complaint

11  against the District of Columbia?

12     A.  What do you mean?

13     Q.  Did you see the Complaint she filed in the

14  District Court?

15     A.  Yes.

16     Q.  You read the whole Complaint?

17     A.  Yes.

18     Q.  Did you read all the circumstances in there

19  including the searching of her belongings?

20     A.  Yes, but I was not there when it happened.

21  Whatever I know is hearsay because I was at another

22  meeting and I was called into her -- well, not called.

0010

1  I was notified to come into her office.  So whatever

2  happened happened prior to me coming down.

3      Q.  Just so I'm clear, you know that the card

4  should have been returned to you, but you don't know

5  the formal rules or understandings provided to other

6  District of Columbia employees intended to establish

7  fixed plans of actions to be followed under

8  circumstances describing the plan, that is, to search

9  Mrs. Seabrooks' personal belongings --

10      A.  I know nothing about searching and as far as

11  I know it's not addressed in the policy and procedure.

12      Q.  But it could be addressed in another document

13  that you're not aware of?

14          MR. ADAMS:  Objection; leading.

15          THE WITNESS:  I don't know.  I've never been

16  searched and I don't know of anybody else who has been.

17  If there's a policy, I know nothing of it.

18  BY MR. FARLEY:

19      Q.  But there could be a policy?

20      A.  Anything's possible.

21      Q.  There's a lot of things about the District

22  that you don't know, correct, even though you've been

0011

1   there for a long time --

2          MR. ADAMS:  Objection; leading.

3   BY MR. FARLEY:

4      Q.   You can answer.

5      A.   I'm sure there are a lot of policies.

6      Q.   Number 4, can you read that for the record.

7      A.   "The names and responsibilities of the policy

8   makers that determined the District of Columbia's

9   policy on the searching of employees' personal

10  belongings as of April 13, 2005."  I can't address,

11  once again.

12      Q.   Number 5, would you read that for the record.

13      A.   "When, where, why and upon whose direction

14  any documents responsive to plaintiff's discovery

15  requests were destroyed, the identity of those

16  documents and the date they were destroyed, the

17  identity of any person who has destroyed documents

18  relating to any of plaintiff's claims and the person

19  responsible for preserving such documents."  I cannot

20  address that either.

21      Q.   And number 6?

22      A.   "The sum and substance of each and every

0012

1   communication between the defendant or its employees,

2   and any investigator or person involved in

3   investigating plaintiff's government-issued credit card

4   that was discussed..." I do not know.

5       Q.  Could you just finish that?

6       A.  "...government-issued credit card that was

7   discussed by the plaintiff and defendant on April

8   13th." I can't discuss every issue. I mean, I'm not

9   aware of every issue. Whatever issue, communication, I

10  have is maintained in the OCFO's office, the office of

11  the chief financial officer. That's where they keep

12  all the records of credit cards.

13      Q.  Do you know how many investigators were

14  appointed to this case?

15      A.  No.

16      Q.  Do you know the name of all the persons

17  involved in investigating this?

18      A.  Do I know the guard's name or anything, is

19  that what you're saying? No, other than Marilyn and

20  Senior-Fisher.

21      Q.  Number 7, could you read that for the record,

22  please.

0013

1    A.  "The process used and the persons involved in

2  creating the standards used for investigating

3  plaintiff's government-issued credit card that was

4  relinquished by her on April 14, 2005, the standards

5  used, when those standards were developed, who

6  developed those standards."  No, I do not.

7    Q.  And number 8.

8    A.  "The date Defendant District of Columbia

9  became aware that Mrs. Seabrooks was being investigated

10  for failing to return her credit card and the names and

11  responsibilities of all those involved in that

12  investigation, including but not limited to any person

13  responsible to review or scan of her personal

14  belongings."  I can't address that either because I

15  don't know who took her personal belongings.

16    Q.  And number 9.

17    A.  "Whether there has been, and the number of

18  investigations Defendant District of Columbia had taken

19  concerning any claim made by Mrs. Seabrooks in this

20  matter, the date the investigation was undertaken, and

21  the identity of any person involved in the

22  investigation, including but not limited to the persons

0014

1  investigated and the identity of the investigators."

2  Once again, I am not aware who investigated or why.

3    Q.  And number 10, please.

4    A.  "All information and standards of the

5  District of Columbia's policies and procedures

6  concerning the use of private security firms to mediate

7  disputes and search employees' belongings."  I don't

8  know anything about that either.

9    Q.  Number 11.

10    A.  "All steps taken by any person to prepare to

11  answer these Rule 30(b)6 questions, including the date

12  preparation began and who was consulted, other than

13  attorneys."

14    Q.  You can speak only to yourself?

15    A.  Yes.

16      MR. ADAMS:  I would object to that.  That was

17  leading.  I don't even think there was a question

18  asked.

19  BY MR. FARLEY:

20    Q.  You can't speak as to anyone else that might

21  have been consulted?

22    A.  No.

0015

1    Q.   Number 12.

2    A.   "The policy and practice used by the District

3    to discipline employees who look through other

4    employees' personal belongings such as purses, bags,

5    clothing pockets, briefcases, et cetera.  This would

6    also include all searches that the District has

7    determined could violate the U.S. Constitution."  Not

8    aware of it at all.

9    Q.   Number 13.

10    A.   "All terms and promises contained in any

11    contract between the District and Defendant Hawk One,

12    including but not limited to those terms concerning

13    Hawk One employees going into employees' offices to

14    look at the personal items of District employees."

15    Unaware of; cannot address.

16    Q.   Number 14.

17    A.   "The complete findings of any report prepared

18    which found plaintiff's personal effects has been

19    touched or moved by any person employed by any

20    defendant in this matter."  Unaware and cannot address.

21    Q.   Number 15.

22

0016

1    A.  "The identification of all searches conducted

2  by any D.C. employee or agents against any other D.C.

3  employee from 2002 to the present.  The searches shall

4  include, but not limited to, all times that a

5  supervisor looked through the personal items of a

6  subordinate, whether personally touching the items or

7  not, the date, time, place and all persons involved."

8  Cannot address.

9    Q.  Number 16.

10    A.  "The method and process used to identify

11  persons in number 15 above."  Cannot address.

12    Q.  Number 17.

13    A.  "All complaints made against Defendant

14  Senior-Fisher from 2000 to the present."  Can't

15  address.

16    Q.  Number 18?

17    A.  "The District's employees that witnessed the

18  events complained of in plaintiff's Complaint and their

19  understanding of those events."  I was not there at the

20  time.

21    Q.  Nobody told you; any preparation between

22  yesterday and today?

0017

1    A.  No.

2    Q.  19.

3    A.  "All training provided to Defendant

4    Senior-Fisher concerning looking through employees'

5    personal effects, all corrective actions taken after

6    the events in the Complaint, and any discipline

7    provided to Senior-Fisher after the events described in

8    the Complaint, identify all communications concerning

9    this matter."  Unaware.

10    Q.  That means you can't answer number 19?

11    A.  No.

12    Q.  Number 20.

13    A.  "The investigation undertaken to answer the

14    above 19 questions."  No.

15    Q.  Can't address 20?

16    A.  Cannot.

17    Q.  So just for the record, you can talk to a

18    part of number 1, right?

19    A.  Yes.

20    Q.  Number 3 you can tell -- can you answer

21    number 3 at all?

22    A.  I can talk on it, yes, I think.

0018

1     Q.   But you can't talk to it as it applies to

2   Mrs. Seabrooks' Complaint because you don't know about

3   the searching of her personal belongings policy?

4       MR. ADAMS:  I'm going to object to that.

5   That's not what number 3 is talking about.  That's

6   further down the list about searching Mrs. Seabrooks.

7   I think if you're going to go through which numbers he

8   can talk about and not talk about, stick to what the

9   number is addressing, the topic that it's addressing.

10      MR. FARLEY:  Mr. Adams, should I show you a

11   copy of the Complaint?

12      MR. ADAMS:  We're not looking at the

13   Complaint; we're looking at your notice of deposition.

14      MR. FARLEY:  Okay, so number 3 when it says,

15   "circumstances describing the Complaint," that would be

16   circumstances described in the Complaint, correct?

17      MR. ADAMS:  Yes.

18      MR. FARLEY:  Should I get a copy of the

19   Complaint so we can go over the circumstances?

20      MR. ADAMS:  We've seen the Complaint and we

21   object and deny most of the things in the Complaint

22   anyway.  So if you have a theory, go ahead and

0019

1  prosecute your case.

2      MR. FARLEY:  Could I just have a one-minute

3  break?

4      (Whereupon, a short recess was taken.)

5  BY MR. FARLEY:

6    Q.  Mr. Wrong, I'm going to read a couple of the

7  allegations in the Complaint, the circumstances that

8  are complained of.

9      MR. ADAMS:  If it's the original one, I have

10  a copy.

11      MR. FARLEY:  Great, if you want to read

12  along.

13  BY MR. FARLEY:

14    Q.  Okay, I'm looking at page 3, and we will

15  start with number 14.  "Prior to March, 2005, the

16  District of Columbia issued Mrs. Seabrooks a credit

17  card."

18      Paragraph 15:  "Mrs. Seabrooks never asked

19  for the credit card and rarely used the credit card."

20      Paragraph 16:  "On or about March 22nd, 2005,

21  the District of Columbia canceled their employees'

22  credit cards, including plaintiff's employer-issued

0020

1  credit card."

2       Number 17:  "Plaintiff was required to return

3  the canceled credit card to the District of Columbia

4  employee, Kenneth Wong."

5       We'll skip a few to number 20:  "Later, on

6  April 13th, 2005, at approximately 2:15, p.m.,

7  Ms. Senior-Fisher entered Mrs. Seabrooks' office

8  unannounced and demanded that Mrs. Seabrooks provide

9  the canceled credit card to her."

10       So for number 20 is one of the first

11  circumstances I want to talk about.  Is that something

12  that you can speak to?

13    A.  I was brought in after the fact.  I was at a

14  meeting.  I was in the hallway and several guards

15  approached me and said, "Would you please come to

16  Mrs. Seabrooks' office?"

17    Q.  So you don't know anything about the 2:15 --

18    A.  I wasn't there.

19    Q.  Number 21:  "Ms. Senior-Fisher told Mrs.

20  Seabrooks that the travel credit card had been

21  suspended and she needed it immediately."  Do you know

22  anything about Ms. Senior-Fisher needed the canceled

0021

1  credit card immediately?

2     A.  Only when I came into the office after the

3  fact, that the guard had been there and everything else

4  had transpired.

5     Q.  Do you know of any policy that would require

6  Ms. Senior-Fisher to immediately take a canceled travel

7  credit card?

8     A.  No.

9     Q.  So you can't speak to that policy?

10     A.  No.

11     Q.  Skipping to page 5, number 28:  "Minutes

12  later, Ms. Senior-Fisher escorted two armed security

13  officers, Officer Roger Harris and Officer Kim Taylor,

14  into Mrs. Seabrooks' office."  Do you know the District

15  of Columbia's policy on bringing armed security

16  officers in?

17     A.  No, I do not.

18     Q.  Number 29:  "The armed security officers

19  worked for defendant's security company and were under

20  the control of Defendant Senior-Fisher."  Do you know

21  the policy on that?

22     A.  No, I do not.

0022

1     Q.   Paragraph 30:  "Officer Taylor asked Mrs.

2     Seabrooks if she had the government property Ms.

3     Senior-Fisher was requesting."  Do you know, Mr. Wong,

4     about the security guards questioning District of

5     Columbia employees for credit cards?

6     A.   In this case, I was not there.

7     Q.   Look at paragraph 32.  "Mrs. Seabrooks also

8     informed the security officers of the DOH procedure

9     which required her to surrender the travel credit card

10    to Kenneth Wong."  Is that correct?  She was to

11    surrender the card to you?

12    A.   Yes.  When she told the guards, I was not

13    there.  I had not entered the picture yet.

14         MR. ADAMS:  I'm going to object to the line

15    of questioning going through the Complaint.  That's

16    beyond the scope of a 30(b)6 deposition.  You are

17    questioning Mr. Wong as a fact witness.  If you're

18    going to question him as a fact witness, I would ask

19    that you at least indicate on the record that's what

20    you're doing.

21         MR. FARLEY:  I'm definitely not asking him as

22    a fact witness.  I'm going on the circumstances

0023

1   described in the Complaint, which is number 3 of the

2   Rule 30(b)6 notice.  That's what you said earlier that

3   it wasn't part of it.

4        MR. ADAMS:  And it's also quite obvious that

5   Mr. Wong is named in the Complaint, so he is a fact

6   witness in this case, as well.  I'm asking you to

7   designate whether you're asking questions pursuant to

8   the 30(b)6 deposition regarding policies and procedures

9   relating to the use of credit cards and revoking of the

10  use of credit cards, and to differentiate that between

11  what happened, what Mr. Wong saw, what he heard and

12  what he said.  I think that's beyond the scope of a

13  30(b)6 deposition.

14        I'm not going to say not to ask the

15  questions.  I just want you to designate where you're

16  going.  Are you talking to Mr. Wong as a fact witness

17  or are you asking him questions as a 30(b)6

18  representative of the District of Columbia?

19        MR. FARLEY:  As I understand the law of the

20  District of Columbia, it's not as cut and dry as you

21  just described it.  Mr. Wong is here to testify on

22  behalf of the District of Columbia as a Rule 30(b)6

0024

1  witness.  Any circumstances that he was a part of, he's

2  making quite clear when he was part of it and when he

3  wasn't a part of it.  I think the record will be quite

4  clear that Mr. Wong is clearly identifying when he is a

5  fact witness and has witnessed something, and when he's

6  speaking on the policy of the District of Columbia.  If

7  you want to clarify at the point that he's answering,

8  you may do so.

9        THE WITNESS:  All the questions that you are

10  asking, I was not there at the time it transpired.  I

11  was called in after the fact.  Then it was explained to

12  me what had happened.

13  BY MR. FARLEY:

14    Q.  Right.  The only question I've asked you

15  about policy I think so far was whether she was

16  required under the District of Columbia's DOH

17  procedures to surrender the travel credit card to you

18  and those are the procedures from this procurement

19  policy and procedure directive that you brought with

20  you today?

21    A.  And I responded, yes, she was.

22    Q.  Paragraph number 35 of Mrs. Seabrooks'

0025

1   Complaint is on page 6:  "Defendants have no legal

2   right to search a DOH manager's personal belongings for

3   a canceled security credit card."  Do you know the

4   District of Columbia's policy on number 35?

5       A.   Whether it is a credit card or anything, I do

6   not know the policy.

7       Q.   Number 39:  "Where the security guard has

8   powers that came to that of a regular police officer

9   and is appointed by a government official, even though

10   employed by a private company, sufficient trappings of

11   state authority have been found to trigger Fourth

12   Amendment restrictions."  Do you know the District of

13   Columbia's policy on that, Mr. Wong?

14       MR. ADAMS:  I'm going to object to that.

15   That's calling for a legal conclusion.

16   BY MR. FARLEY:

17       Q.   Number 45:  "Defendant intentionally created

18   an apprehension of immediate physical harm to Mrs.

19   Seabrooks by means of overgestures and threats, to wit,

20   moving to block Mrs. Seabrooks' exit from her office,

21   jumping in front of her with her gun shown, and

22   startling with her for no known purpose, other than to

0026

1   create in Mrs. Seabrooks an apprehension of immediate

2   physical harm."  Do you know the District of Columbia's

3   policy on blocking executives from leaving their

4   office?

5       A.  No, I do not.

6       Q.  You don't know their policy as it relates to

7   bringing armed security guards to do that?

8       A.  No, I do not.

9          MR. ADAMS:  I object.  That assumes facts not

10  in evidence.

11  BY MR. FARLEY:

12      Q.  Number 50:  "Ms. Senior-Fisher gave the order

13  on behalf of the District of Columbia for security

14  supervisor Robert Stanley, security officer Roger

15  Harris and security officer Kim Taylor, to search

16  Mrs. Seabrooks' personal purse and tote bag."  Do you

17  know the policies concerning that circumstance --

18      A.  No, I do not.

19      Q.  Number 53:  "The execution of D.C.'s policy

20  or custom to illegally search employees' purses or

21  handbags represents official policy."

22      A.  Can't address that.

0027

1        MR. ADAMS:  Object to it as it assumes facts

2    not in evidence.

3    BY MR. FARLEY:

4        Q.   Number 54:  "Defendant policy or custom to

5    search employees' purses or handbags in these types of

6    situations is unconstitutional."

7        MR. ADAMS:  Objection.  That calls for a

8    legal conclusion.  This man is not here as a legal

9    expert.

10   BY MR. FARLEY:

11       Q.   Can you answer that question as it relates to

12   number 53?

13       A.   I'm not aware of that.

14       Q.   Number 55:  "D.C.'s official policy or custom

15   inflicted the injury here."  Do you know D.C.'s

16   official policy or custom that was in place here?

17       A.   I do not.

18       Q.   Number 56:  "D.C.'s policy or custom was the

19   moving force in depriving plaintiff of her

20   constitutional rights."  Do you know --

21       MR. ADAMS:  Objection --

22       THE WITNESS:  I can't address that.

0028

1  BY MR. FARLEY:

2    Q.  Number 65, on page 9:  "Defendants acted

3  under the collar of state law within the meaning of

4  Section 1983 when they exercised the power possessed by

5  virtue of state law and made possible only because they

6  were clothed with the authority of state law."  Can you

7  address that, Mr. Wong?

8    A.  No.

9      MR. ADAMS:  Just to make a standing objection

10  to any of these questions relating to conclusions of

11  law, interpretations of statute, Constitution of the

12  United States.  It's beyond the scope of a 30(b)6

13  deposition, what this deposition was called for.

14  Mr. Wong is not an attorney and he was not asked to

15  come here and give legal opinions.  I don't want to cut

16  up the record by continuing to make objections, but

17  proceed.

18  BY MR. FARLEY:

19    Q.  Number 70:  "Defendant District of Columbia's

20  knowledge of and failure to keep risks that

21  Ms. Senior-Fisher supposed to approximately cause the

22  assault on Mrs. Seabrooks."  Can you speak to that?

0029

1    A.  No, cannot.

2    Q.  So getting back to number 3, for the

3  circumstances described in the Complaint, you can't

4  speak to those, can you?

5    A.  Only the credit card.  When it's canceled or

6  terminated it's to be returned to the agency

7  coordinator, which I am in this case, and Marilyn did

8  give the card back to me.

9    Q.  And she gave it back to you, as you had

10  agreed earlier?

11    A.  I was on leave and I came in for a meeting.

12  Marilyn said to me, "I'll give it to you tomorrow"

13  which was a Friday.  I said, "Marilyn, I'm still on

14  leave.  I won't be back until Monday," at which time on

15  Monday she returned the card.

16    Q.  Just to cut this short for number 3, that's

17  the only circumstance that you can answer as to number

18  3?  There is no other information you can give me about

19  number 3?

20    A.  Yes.

21      MR. ADAMS:  I object.  Unless you ask him

22  specific questions, maybe he could.  But to say you

0030

1  know nothing about this paragraph, I think that's

2  overbroad.

3  BY MR. FARLEY:

4      Q.   Number 4, just so I know, the next one that

5  you said you can answer something about is number 11;

6  is that correct?  Just look through those.

7      A.  I can't even address number 11.

8      Q.  And you can't address any of the other ones,

9  correct?

10      A.  Correct.

11          MR. FARLEY:  Is there any other Rule 30(b)6

12  witness here, Mr. Adams?

13          MR. ADAMS:  Not that I can see.

14          MR. FARLEY:  Do you have any questions?

15  EXAMINATION BY COUNSEL FOR DISTRICT OF COLUMBIA

16  BY MR. ADAMS:

17      Q.  Mr. Wong, can you explain the procedure for

18  issuing credit cards in the District of Columbia to

19  employees at the Department of Health?

20      A.   Individuals are identified normally by the

21  senior deputy director of their administration, at

22  which time the person's name is submitted to the agency

0031

1   review team for approval and once it's approved, the

2   name of the person is sent forward to the Office of

3   Contract and Procurement for training.

4        MR. FARLEY:  For the record, Mr. Adams, can

5   you identify which question you're asking about in the

6   Rule 30(b)6 topics?

7        MR. ADAMS:  I think number 1.

8        MR. FARLEY:  The procedures and policies used

9   to recover government-issued credit cards from

10  supervisory personnel?  He didn't testify as to

11  anything to supervisory personnel and recovering the

12  government-issued credit cards.  I think you just asked

13  him how you get a credit card.

14       MR. ADAMS:  We'll get there.  You have to get

15  one before it can be taken back.

16       MR. FARLEY:  I don't think there is any doubt

17  that Mrs. Seabrooks had a credit card.

18       THE WITNESS:  No.

19       MR. ADAMS:  In any case, I'm asking the

20  questions now.

21       MR. FARLEY:  We're at a Rule 30(b)6

22  deposition.  There's no sense Mrs. Seabrooks paying for

0032

1   something.  If you want to depose --

2          MR. ADAMS:  If she didn't want to pay for the

3   deposition, she shouldn't have called the deposition.

4   You don't get to call a deposition and I don't get to

5   redirect and cross-examine my own witness.

6          MR. FARLEY:  You can, but on the topics of

7   the deposition, not on the facts --

8          MR. ADAMS:  You went through the entire

9   Complaint.

10          MR. FARLEY:  I don't think you heard me ask

11   any questions on the issue of a credit card and I think

12   that was your question.

13          MR. ADAMS:  Mr. Farley, you just went through

14   your entire Complaint that goes to talking about her

15   credit card.

16          MR. FARLEY:  That goes to number 3, correct,

17   the circumstances described in the Complaint?

18          MR. ADAMS:  It goes to your whole line of

19   questioning that went beyond the 30(b)6 deposition.

20   You questioned Mr. Wong as a fact witness.  I'm going

21   to redirect him on certain questions, if you don't

22   mind.

0033

1        MR. FARLEY:  I, actually, do mind because

2    number 3 went to obtain the return of plaintiff's

3    government-issued credit card so there's no reason to

4    talk about what you're talking about.

5        MR. ADAMS:  We're going to talk about it

6    anyway.

7        MR. FARLEY:  No, we're --

8        MR. ADAMS:  We are going to talk about it.

9        MR. FARLEY:  We'll call the Judge then.

10       MR. ADAMS:  Call the Judge then.  We're going

11   to have a deposition, if you don't mind.  Get him on

12   the phone.  I'm not going to sit here and play games.

13   If you're going to call a deposition and you don't want

14   me to ask questions of the witness, that's ridiculous.

15       MR. FARLEY:  We'll let the Judge handle it.

16   There's no reason to get upset.

17       (Whereupon, a short recess was taken.)

18       MR. FARLEY:  You can go ahead, Mr. Adams,

19   until he calls back.

20   BY MR. ADAMS:

21       Q.  We were discussing the process for issuing

22   government credit cards to District of Columbia

0034

1  employees.  What is your role in the agency in issuing

2  those credit cards?

3      A.  I don't actually issue them.  I just

4  coordinate the fact who gets a card through the

5  committee's ruling.  The individual attends a training

6  session that's a half a day from the Office of Contract

7  and Procurement, citywide.  And prior to that, he or

8  she is instructed to download the policy and procedure

9  directive on the credit card.

10       Once the person has gone through the

11  training, they sign off on a delegation of contracting

12  authority accepting the responsibility of having a

13  card.  Once they've done that and they put money or

14  identified moneys for the credit card, the card is

15  issued within five to ten days.

16     Q.  And the credit card is delivered to the

17  person or the individual?

18     A.  No.  I have to go over to OCP and sign for

19  the card and then I call the individual into my office

20  and give them the card and ask them if there are any

21  questions they have, they can contact me.  I'm the

22  point of contact.

0035

1    Q.   What policy and procedure directive were you

2  discussing that you just mentioned?

3    A.   It's the official OCP, a contracting policy

4  and procurement directive.  I think it's 9000.01 or

5  it's downloaded by the new card holder.

6    Q.   To whom does this card belong?

7    A.   The card belongs to the City.  It's delegated

8  to the card holder.  In other words, in this case, the

9  card was District owned, but given to Marilyn

10  Seabrooks.

11    Q.   Under what circumstances can a card be

12  revoked?

13    A.   There are several infractions:  Misuse,

14  waste, fraudulent, and a person no longer wants a

15  credit card.

16    Q.   What procedure is followed when those cards

17  are revoked?

18    A.   The individual is notified that they need to

19  cease using the card.  The bank is notified by phone

20  the same day so that no further charges can be made.

21  The card is returned to me.

22    Q.   Do you know of circumstances where cards have

0036

1   been revoked in the Department of Health?

2      A.   Yes.

3      Q.   Has it been more than once?

4      A.   Two or three times.

5      Q.   Are there any particular forms or letters

6   that are used in revoking these cards?

7      A.   The person is informed that their card is

8   being revoked, suspended or terminated, and a copy of

9   that is given to the employee or the credit card holder

10  and is then forwarded over to OCP for their official

11  document file.

12     Q.   Mr. Farley had asked you some questions

13  regarding policy for searches.  I think that was at

14  number 35 -- paragraph 35 in the Complaint.  In any

15  case, are you aware of any policy that relates to

16  searching?

17     A.   No, I'm not.

18     Q.   Of employees, personally?

19     A.   No.

20     Q.   Do you know whether the District of Columbia

21  authorized Ms. Senior-Fisher to conduct any searches of

22  Ms. Mydral?

0037

1     A.   No, I do not.

2     Q.   In your procurement policy that you referred

3   to, 9000.01, is there a procedure in there for revoking

4   credit cards having been issued to government

5   employees?

6     A.   Yes.

7     Q.   And is there any procedure in that manual

8   that would direct a supervisor to conduct a search of

9   an employee in an effort to return a credit card?

10     A.   No, that I'm aware of.

11         MR. ADAMS:  I don't have any other questions

12   for Mr. Wong at this time.

13         MR. FARLEY:  I'm all done, too.

14         (Whereupon, at 11:01 a.m., the deposition of

15          KENNETH WONG was concluded.)

16             * * * * *

17

18

19

20

21

22

0038

1          CERTIFICATE OF NOTARY PUBLIC

2     I, Jacqueline Schultes, Registered Professional

3   Reporter and Certified Realtime Reporter, the officer

4   before whom the foregoing deposition was taken, do

5   hereby certify that the witness whose testimony appears

6   in the foregoing deposition was duly sworn by me; that

7   the testimony of said witness was taken by me in

8   stenotype and thereafter reduced to typewriting under

9   my direction; that said deposition is a true record of

10   the testimony given by said witness; that I am neither

11   counsel for, related to, nor employed by and of the

12   parties to the action in which this deposition was

13   taken; and, further, that I am not a relative or

14   employee of any counsel or attorney employed by the

15   parties hereto, nor financially or otherwise interested

16   in the outcome of this action.

17

18

19          JACQUELINE SCHULTES

          Notary Public in and for the

20   Commonwealth of The District of Columbia

21

My commission expires:

22  February 29, 2012

0039

1  A C K N O W L E D G E M E N T   O F   D E P O N E N T

2

3

4  I, KENNETH WONG, do hereby acknowledge I have read and

5  examined the foregoing pages of testimony, and the same

6  is a true, correct and complete transcription of the

7  testimony given by me, and any changes or corrections,

8  if any, appear in the attached errata sheet signed by

9  me.

10

11

12

13

14

15  _____          _____

16  DATE                          KENNETH WONG

17

18

19

20

21

22

0040

1   C. VAUGHN ADAMS, ESQUIRE

2   Office of the Attorney General, District of Columbia

3   441 4th Street, Northwest, Suite 600 South

4   Washington, D.C.  20001

5

6   IN RE:  Marilyn Seabrooks Mydral v The District of

7   Columbia, et al.

8

9   Dear Mr. Adams:

10      Enclosed please find your copy of the

11  deposition of KENNETH WONG, along with the original

12  signature page.  As agreed, you will be responsible for

13  contacting the witness regarding signature.

14      Within 30 days of receipt, please forward

15  errata sheet and original signed signature page to

16  counsel for plaintiff.  If you have any questions,

17  please do not hesitate to call.  Thank you.

18  Yours,

19

20  Jacqueline Schultes, RPR, CRR

21  Notary/Reporter

22  Cc:  Mr. Willam P. Farley, Esq.

0041

 1  Capital Reporting Company

 2  1821 Jefferson Place, Northwest, 3rd Floor

 3  Washington, D.C., 20036

 4  (202) 857-3376

 5

 6      E R R A T A   S H E E T

 7  Case Name:  Marilyn Seabrooks Mydral v The District of

 8  Columbia, et al.

 9  Witness Name:  KENNETH WONG

10   Deposition Date:  December 19, 2007

11

12  Page No.   Line No.  Change        Reason for Change

13

14

15

16

17

18

19

20

21  _____          _____

22  Signature                Date